# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 19, 2014         Decided May 1, 2015

No. 13-5342

MORGAN DREXEN, INC. AND KIMBERLY A. PISINSKI,
APPELLANTS

v.

CONSUMER FINANCIAL PROTECTION BUREAU,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-01112)

*Randall K. Miller* argued the cause for appellants. With him on the briefs were *Nicholas M. DePalma* and *Randal M. Shaheen*. *David D. Conway* entered an appearance.

*John R. Coleman*, Senior Litigation Counsel, Consumer Financial Protection Bureau, argued the cause for appellee. With him on the brief was *Meredith Fuchs*, General Counsel. *Nandan M. Joshi*, Counsel, entered an appearance.

2

Before: ROGERS, KAVANAUGH and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

Dissenting opinion filed by *Circuit Judge* KAVANAUGH.

ROGERS, *Circuit Judge*: Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 12 U.S.C. §§ 5481 *et seq.*, established the Consumer Financial Protection Bureau to "regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws." *Id.* § 5491(a). The Bureau is to "implement and . . . enforce Federal consumer financial law," *id.* § 5511(a), including eighteen pre-existing statutes and Title X itself, *see id.* §§ 5481(12), (14). To carry out these duties, the Bureau has rulemaking, supervisory, investigatory, adjudicatory, and enforcement authority, *id.* §§ 5512(b), 5514–5516, 5562–5564, including the authority to file civil enforcement actions against regulated parties, *id.* § 5564; *see also* 15 U.S.C. § 6105(d).

The district court, without reaching the merits of appellants' constitutional challenge to Title X as a violation of the separation of powers, dismissed appellants' complaint for injunctive and declaratory relief. It ruled that Morgan Drexen, Inc., had an adequate remedy at law in an enforcement action filed by the Bureau in the Central District of California, where Morgan Drexen could raise the constitutional challenge as a defense. The district court ruled that the other plaintiff, Kimberly Pisinski, an attorney who contracts with Morgan Drexen for paralegal services, lacked standing under Article III of the Constitution. They appeal, and we affirm. Pisinski has failed to proffer evidence of an injury in fact at the time she filed the complaint, and Morgan Drexen fails to show the district

court abused its discretion in dismissing the complaint. Notwithstanding Morgan Drexen's objection that it filed the complaint before the Bureau filed its enforcement action, the same issues involving the same parties were pending before two federal district courts.  The Bureau filed its enforcement action fewer than thirty days after Morgan Drexen filed its complaint. Once the Bureau did so, Morgan Drexen no longer faced the dilemma of whether to change its behavior or risk continued violation of the law in order to get a hearing.  Without prejudice to its constitutional challenge, Morgan Drexen was also relieved, as was the judicial system, of the burdens of litigating overlapping claims in two federal district courts.

## I.

Morgan Drexen, a Nevada corporation headquartered in California, "is in the business of licensing its proprietary software to law firms and providing these firms with live paraprofessional and support services," including support for bankruptcy and debt-relief legal practices.  Decl. of Walter Ledda, Chief Exec. Offr., Morgan Drexen ¶¶ 2–3 (July 21, 2013).  Pisinski, an attorney licensed to practice in the State of Connecticut whose law practice includes bankruptcy matters, contracts with Morgan Drexen for paralegal services.  Decl. of Kimberly A. Pisinski, Esq. ¶¶ 1–3 (July 21, 2013).

On April 22, 2013, after an investigation lasting more than a year, the Bureau notified Morgan Drexen that its enforcement office was "considering recommending that the Bureau take legal action" against Morgan Drexen and its Chief Executive Officer Walter Ledda for violations of the Consumer Financial Protection Act, 12 U.S.C. § 5536, and the Telemarketing Sales Rule, 16 C.F.R. § 310.  *See* Ltr. from Wendy Weinberg, Enforcement Att'y, Consumer Fin. Prot. Bureau, to Randal Shaheen, Esq., Counsel for Morgan Drexen 1 (Apr. 22, 2013).

Morgan Drexen was offered an opportunity to explain why legal action should not be taken. On May 8, 2013, Morgan Drexen responded and proposed a settlement. *See* Ltr. from Randal M. Shaheen, Esq., to Lucy Morris, Esq., Consumer Fin. Prot. Bureau 6 (May 8, 2013). Following a May 29, 2013, meeting, the enforcement office inquired about certain data and sought further document production from Morgan Drexen by June 30, in response to a March 13, 2012, civil investigative demand ("CID"). *See* Ltr. from Gabriel O'Malley, Enforcement Att'y, Consumer Fin. Prot. Bureau, to Randal M. Shaheen, Esq. (June 12, 2013). A further written communication indicates that Morgan Drexen represented to the Bureau that it did not intend to respond to all of the Bureau's production requests until the Bureau engaged in settlement discussions but that it would produce certain documents over the course of the month of July. *See* Email from Gabriel O'Malley, Enforcement Att'y, Consumer Fin. Prot. Bureau, to Randal M. Shaheen, Esq. (July 8, 2013).

On July 22, 2013, Morgan Drexen and Pisinski sued the Bureau in the U.S. District Court for the District of Columbia. Their complaint sought declaratory and injunctive relief, alleging that the independent structure of the Bureau under Title X of the Dodd-Frank Act is unconstitutional because the powers delegated to the Bureau are overbroad, the Bureau is headed by a single director removable only for cause, it is funded outside the normal appropriations process, and judicial review of its actions is limited, all in violation of the constitutional separation of powers. Compl. ¶ 120. With the complaint, Morgan Drexen and Pisinski filed a motion for a preliminary injunction. Three days later the district court and the parties agreed to proceed with expedited briefing; the motion for a preliminary injunction was withdrawn and the parties filed cross motions for summary judgment.

On August 20, 2013, the Bureau filed an enforcement action against Morgan Drexen and CEO Ledda in the U.S. District Court for the Central District of California, alleging violations of the Telemarketing Sales Rule and the Consumer Financial Protection Act. Specifically, the Bureau alleged that Morgan Drexen had violated the Telemarketing Sales Rule by, among other things, charging consumers illegal up-front fees for debt-relief services disguised as fees for bankruptcy services that most consumers do not need and that are not performed. Complaint ¶¶ 74–83, *Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc.*, ---F. Supp. 3d---, No. SACV 13-1267-JLS, 2014 WL 5785615 (C.D. Cal. Jan. 10, 2014). The Bureau also alleged that Morgan Drexen's representations to consumers are misleading, in violation of the Telemarketing Sales Rule and the Consumer Financial Protection Act, *see id.* ¶¶ 84–87, 91–97, and that although Morgan Drexen claims only to support attorneys in the provision of debt-relief and bankruptcy services, in fact, "[i]n numerous instances, . . . Morgan Drexen . . . performs virtually all of the debt resolution work," *id.* ¶ 42. Neither Pisinski nor any other lawyer contracting with Morgan Drexen was named in the enforcement action. On August 22, 2013, Morgan Drexen and Pisinski moved in the D.C. district court for a temporary restraining order and a preliminary injunction to enjoin the Bureau from prosecution.

On October 13, 2013, the D.C. district court granted the Bureau's motion to dismiss the complaint, or in the alternative for summary judgment, without reaching the merits of the constitutional challenge to Title X. The district court found that Morgan Drexen had an adequate remedy at law in the enforcement action and would suffer no irreparable injury from the denial of relief. It found that Pisinski lacked standing under Article III of the Constitution, and it dismissed as moot plaintiffs' requests for a temporary restraining order and preliminary injunction. *Morgan Drexen, Inc. v. Consumer Fin.*

*Prot. Bureau*, 979 F. Supp. 2d 104 (D.D.C. 2013).[1]

Morgan Drexen and Pisinski appeal. Our review of the decision to deny permanent injunctive and declaratory relief is for abuse of discretion. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995). Our review of the district court's decision on standing is *de novo*. *Sierra Club v. Jewell*, 764 F.3d 1, 4 (D.C. Cir. 2014). We first address whether Pisinski has standing.

## II.

"[T]he irreducible constitutional minimum of standing" is "an injury in fact . . . which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, . . . a causal connection between the injury and the conduct complained of . . . , [and] it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and internal quotation marks omitted). Pisinski

---

[1] On April 21, 2015, the California district court granted the Bureau's motion for sanction of default judgment against Morgan Drexen, finding that "[d]efendants willfully and in bad faith engaged in a coordinated and extensive effort to deceive the Court and opposing counsel" and having "blatantly falsified evidence . . . concealed this fact from the Court, opposing counsel, and even their own counsel at every turn." *Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc*., ---F. Supp. 3d---, No. SACV 13-1267-JLS, 2015 WL 1926223, at \*13 (C.D. Cal. Apr. 21, 2015). The California case remains pending against CEO Ledda. *See id.* at \*17. In light of our disposition, we need not address whether this development renders appellants' contentions prudentially moot or precluded under *res judicata*.

contends that she has standing under Article III of the Constitution because the Bureau's enforcement action against Morgan Drexen is inherently an enforcement action against her, causing her injury because her law practice may be enjoined and the Bureau lacks authority to regulate lawyers. *See* Appellants' Br. 20–21, 24, 27–28. Her injury, she maintains, includes economic damage and a possible threat to her professional standing.

Because the issue of standing arises at the summary judgment stage, Pisinski "can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (citation and internal quotation marks omitted). Although the court must assume that she will prevail on the merits of her constitutional challenge to Title X of the Dodd-Frank Act, *see Muir v. Navy Fed. Credit Union*, 529 F.3d 1100, 1105 (D.C. Cir. 2008), the court is not required to accept as true her assertion that the Bureau is illegally regulating attorneys because that question does not relate to the merits of her constitutional claim. Additionally, it would not be enough for Pisinski to demonstrate past harm when she seeks only forward-looking relief; she "must show [she] is suffering an ongoing injury or faces an immediate threat of injury." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). In *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 n.5 (2013), the Supreme Court clarified that a plaintiff must show that there is a "substantial risk" that the harm will occur. The record evidence — including sworn declarations from Pisinski, Morgan Drexen's CEO Ledda, and Morgan Drexen's attorney Randal Shaheen — does not show a substantial risk of injury to Pisinski.

Because Pisinski was not "the object of the government action or inaction [s]he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan*, 504 U.S. at 562 (citations and internal quotation marks omitted). Pisinski's only record evidence relating to the Bureau's intent to regulate attorneys is her attorney's statement that the Bureau "has informed me that their *concern* is that the attorneys supported by Morgan Drexen are in violation of the amended Telemarketing Sales Rule because the attorneys charge their clients hourly fees for the preparation of bankruptcy pleadings." Decl. of Randal M. Shaheen ¶ 43 (July 21, 2013) (emphasis added). The Bureau disavowed this characterization of its communications with Pisinski's attorney, pointing to its April 22, 2013, notice of likely enforcement action, which references only Morgan Drexen and its CEO. There is no record evidence that the Bureau ever threatened an enforcement action against Pisinski or any attorney contracting with Morgan Drexen for paralegal services. The Bureau's "concern" regarding attorneys is expressed in its enforcement action based on Morgan Drexen's own allegedly illegal conduct rather than Morgan Drexen's "support[]" for allegedly illegal activity by attorneys.

Nonetheless, Pisinski maintains that "the lawyer and her paralegal engaged in the enterprise of law are inseparable," so that the Bureau cannot regulate Morgan Drexen without illegally regulating her. *See* Appellants' Br. 27–28. This assertion is unsupported by the record evidence. Although CEO Ledda states that "Morgan Drexen provides non-attorney paralegal support services to attorneys" and that "Morgan Drexen has contracted with Pisinski to provide such services to support her law practice," he does not describe what services Morgan Drexen provides to Pisinski or how Pisinski directs Morgan Drexen. *See* Ledda Decl. ¶¶ 3–4. Pisinski's declaration does

not fill the gap. She states: "I offer clients bankruptcy services," "I contract with Morgan Drexen to provide non-attorney/paralegal services that support my law practice," and "I supervise Morgan Drexen and remain responsible for all services delegated to Morgan Drexen." Pisinski Decl. ¶¶ 2–3. She also states: "[M]y clients may elect for me to first amicably resolve their debts with creditors prior to filing the bankruptcy petition." *Id.* ¶ 2. Pisinski has not shown that the debt settlement and bankruptcy services for which she engages Morgan Drexen are targeted in the enforcement action. The record indicates that Morgan Drexen contracts with an unknown number of attorneys who are not necessarily connected to each other and that it provides an array of different services. *See* Third Resp. CID 5–10 (Apr. 27, 2012). The record does not indicate whether an attorney contracts for all or some of these services. *See id.*; Sixteenth Resp. CID 2 (Aug. 7, 2012); Shaheen Ltr. May 8, 2013, at 1–3. Rather, as Morgan Drexen pointed out in responding to the Bureau's April 22, 2013, notice, "Morgan Drexen has different procedures for the attorneys it supports," and "[t]here are also differences among the attorneys Morgan Drexen supports with respect to client engagement terms." Shaheen Ltr. May 8, 2013, at 3. Pisinski's failure to proffer evidence showing that the Bureau's enforcement action addresses a part of Morgan Drexen's business that she engages and supervises is fatal to her standing.[2]

---

[2] Appellants filed a motion to supplement the record with three documents that they first brought to this court's attention after the parties' briefs were filed. Appellants' request comes too late. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 495 n.*, 500 (2009); *Fair Emp't Council of Greater Wash. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1275 n.2 (D.C. Cir. 1994). Only one document contains information relevant to Pisinski's standing; excerpts from the Bureau's statement of uncontroverted facts and conclusions of law in support of its motion for summary judgment in the California enforcement action describe the Bureau's understanding of Pisinski's relationship with

Morgan Drexen. In the D.C. district court, the Bureau challenged Pisinski's standing in its motion to dismiss the complaint, or in the alternative for summary judgment, and the issue was fully litigated. Appellants do not claim that the factual statements relating to Pisinski's contractual relationship with Morgan Drexen involve facts that were not within Pisinski's personal knowledge and control when appellants filed their complaint. Appellants offer no reason, much less an extraordinary one, why they failed to proffer such evidence in the district court. They also appear not to have proffered such evidence in the California district court when Pisinski moved to intervene pursuant to Federal Rule of Civil Procedure 24; the California district court denied the motion for failing, among other things, to provide details concerning Pisinski's contractual relationship with Morgan Drexen. *See Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc.*, No. 8:13-cv-01267-JLS-JEM, slip op. at 4–6 (C.D. Cal. Mar. 10, 2014). Despite rulings from the district courts here and in California indicating that evidence of Pisinski's interest in the Bureau's enforcement action against Morgan Drexen was inadequate, appellants waited seven months after the California district court denied intervention before moving to supplement the record in this court. Supplementing the appellate record pursuant to Federal Rule of Appellate Procedure 10(e) under these circumstances would be inappropriate. *See Colbert v. Potter*, 471 F.3d 158, 165 (D.C. Cir. 2006); *Boggs v. Rubin*, 161 F.3d 37, 41 (D.C. Cir. 1998). In addition to offering no explanation for their failure timely to proffer available evidence to the D.C. district court, appellants have denied the Bureau the opportunity to address that evidence in its responsive brief in this court, *cf. Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 123 (D.C. Cir. 2010), and granting this request would undermine the district court's factfinding role, *see* 16A Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 3956.1, at 632 (4th ed. 2008). For similar reasons, appellants' request that the court take judicial notice of these documents comes too late; the plaintiff was on notice that the evidence was relevant to her case and could timely have submitted it to the district court. *See, e.g.*, *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 303 (3d Cir. 2011) (citing *Zell v. Jacoby-Bender, Inc.*, 542 F.2d 34, 38 (7th Cir. 1976)); *Melong v.*

Because Pisinski has not shown that the Bureau has threatened imminent enforcement action against her, her burden to show standing is heavier. *See Lujan*, 504 U.S. at 562; *Chamber of Commerce v. EPA*, 642 F.3d 192, 201 (D.C. Cir. 2011). A review of the record demonstrates that she failed to proffer evidence that her law practice likely will suffer an injury as the result of the Bureau's actions against Morgan Drexen. Pisinski asserts on brief that she might be forced to disgorge fees if the Bureau succeeds in its enforcement action against Morgan Drexen. *See* Appellants' Br. 23. Nothing in the record indicates there is a substantial risk that Morgan Drexen will seek reimbursement from Pisinski for any penalties it may have to pay, and it is her burden to put forth facts showing that the risk of such harm is substantial, not speculative. *See, e.g.*, *Clapper*, 133 S. Ct. at 1150 n.5. Pisinski similarly asserts that "[i]t cannot be the case that a person lacks standing to challenge an agency that seeks to terminate the person's existing business and claw back the profits," Appellants' Br. 24, and that the Bureau in its enforcement action "seeks an injunction that would enjoin Pisinski's law practice," Reply Br. 4. There is nothing in the record to show that her law practice will be "terminated" or "enjoin[ed]."

There is also no record evidence that Morgan Drexen will be unable in the future to provide the paralegal services that Pisinski requires for her law practice. Although CEO Ledda and Attorney Shaheen state their understanding that the Bureau is requiring Morgan Drexen to stop serving lawyers who offer debt settlement together with bankruptcy services, *see* Ledda Decl. ¶ 11, Shaheen Decl. ¶ 43, the Bureau disavowed this characterization of its demands, referencing its April 22, 2013, notice. Aside from Ledda's and Shaheen's statements, which

*Micronesian Claims Comm'n*, 643 F.2d 10, 12 n.5 (D.C. Cir. 1980).

alone are "not significantly probative," *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986), there is no record evidence supporting Ledda's and Shaheen's assertions that Morgan Drexen will be enjoined or otherwise prevented from contracting with lawyers like Pisinski. Their speculation about the outcome of the enforcement action cannot support Pisinski's standing. When parties "only aver that any significant adverse effects . . . 'may' occur at some point in the future, they fail[] to show the actual, imminent, or 'certainly impending' injury required to establish standing." *Chamber of Commerce*, 642 F.3d at 202 (citations and internal quotation marks omitted); *see also Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013).

At best, Pisinski states, albeit in a conclusory manner, that the Bureau's investigation — specifically its demand that Morgan Drexen produce documents regarding her clients — "has been disruptive to my practice and to my clients." Pisinski Decl. ¶ 4; *see also id.* ¶¶ 5–10. Pisinski recounts that her clients have told her that they are concerned that the government may access their financial information, that she worries that her clients will withhold from her information she needs to provide effective representation, and that she will lose clients. *See id.* ¶¶ 7, 9. The district court gave no weight to Pisinski's client concerns because it found the Bureau never sought, and concluded it could not have obtained, her privileged client communications, and the Bureau will not be issuing any more demands. *Morgan Drexen, Inc.*, 979 F. Supp. 2d at 120. Without challenging these findings or the district court's legal analysis, Pisinski continues to assert that the Bureau's enforcement action threatens to invade her clients' confidentiality. *See* Reply Br. 5. But her speculation that her clients' confidentiality and her client relations will be impaired in the future is unsupported in light of her silence in the face of the district court's ruling. Furthermore, Pisinski does not

indicate that the "disrupti[on]" to her law practice has been ongoing now that the Bureau's investigation is over, and Pisinski cannot rely on any past disruption to obtain declaratory and injunctive relief. *See Dearth*, 641 F.3d at 501. Pisinski has not explained how an injury caused by the Bureau's discontinued conduct is redressable by the relief she seeks. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104–09 (1998). Vague, conclusory statements regarding "disrupti[on]" to her practice are insufficient at the summary judgment stage to show standing. *See Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009); *cf. Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

Pisinski does maintain on appeal that her "professional standing" and law practice may be in jeopardy because the enforcement action against Morgan Drexen implies that she has engaged in unethical behavior by failing to supervise Morgan Drexen or by actively participating in the alleged illegal conduct. *See* Appellants' Br. 22, 25. Without evidence that she engages the services of Morgan Drexen that the Bureau alleges are illegal, this assertion, too, fails. Pisinski proffered no specific facts tending to show reputational harm, such as loss of clients or other business. Moreover, because the enforcement action does not seek to enjoin Pisinski's law practice, she would need to proffer evidence that, as a result of the Bureau's action, her practice is threatened by other authorities, and she has not done so. Instead, the record evidence shows that the Connecticut State Bar and the State Banking Department have reviewed, and approved, Pisinski's use of Morgan Drexen's paralegal services. *See* Shaheen Ltr. May 8, 2013, at 4 (noting approvals in 2009). "If the threat is imagined or wholly speculative, the dispute does not present a justiciable case or controversy." *Seegars v. Gonzales*, 396 F.3d 1248, 1252 (D.C. Cir. 2005). Additionally, any potential injury from Bar disciplinary proceedings stemming from her association with

Morgan Drexen would neither be caused by the Bureau's enforcement action nor be redressable by a declaration that Title X of the Dodd-Frank Act is unconstitutional.

In sum, Pisinski has failed to proffer evidence in support of any of her theories of standing: that she was responsible for Morgan Drexen's allegedly illegal conduct, that her practice is or will be economically harmed by the Bureau's enforcement action against Morgan Drexen, or that implicit accusations by the Bureau that she exercised too little control over Morgan Drexen or engaged in illegal conduct herself could damage her professional standing. The record evidence does not show that she used Morgan Drexen's allegedly illegal services or that there is a substantial risk that the Bureau's enforcement action will cause the harms to her practice or professional reputation that she has asserted. The record shows that Pisinski has a consumer-service contractual relationship with Morgan Drexen; without more, evidence of injury to her contractor does not demonstrate Pisinski's standing. *See Morgan Drexen, Inc.*, 979 F. Supp. 2d at 121–22; *cf., e.g.*, *PDK Labs. Inc. v. U.S. Drug Enforcement Agency*, 362 F.3d 786, 790–91 (D.C. Cir. 2004); *Air Reduction Co. v. Hickel*, 420 F.2d 592, 594 (D.C. Cir. 1969).

## III.

Morgan Drexen contends that pre-enforcement review of Title X is appropriate and that "[i]n evaluating whether to exercise its injunctive and declaratory powers" the district court erred by failing to "consider[] the strength of Morgan Drexen's showing on the merits of its constitutional challenge." Appellants' Br. 29. Title X confronts Morgan Drexen with what it characterizes as "a unique kind of irreparable harm," for if Title X is unconstitutional, then Morgan Drexen is "harmed by an entity whose very existence violates the Constitution." *Id.* Observing that this court has recognized the appropriateness of

pre-enforcement review of a statute on constitutional grounds, *see id.* at 45 (citing *Gen. Elec. Co. v. EPA*, 360 F.3d 188, 190–94 (D.C. Cir. 2004)), Morgan Drexen maintains that the D.C. district court, "[a]s a matter of judicial authority," should not have required it to be "strong-armed" by the Bureau into regulatory compliance or to wait until the Bureau decided to bring its enforcement action before filing its "free[-standing] threshold challenge to the constitutionality of [Title X]." *See id.* It relies on *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), in which the Supreme Court held that a new federal agency's structure was unconstitutional after the target of an enforcement action sought "an injunction preventing the Board from exercising its powers." Appellants' Br. 30 (quoting *Free Enter. Fund*, 561 U.S. at 487) (internal quotation marks omitted).

Morgan Drexen's reliance on *Free Enterprise Fund* is misplaced. Although "federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred . . . [t]hat principle does not eliminate . . . the federal courts' discretion in determining whether to grant certain types of relief." *New Orleans Public Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358–59 (1989). In *Free Enterprise Fund*, the Supreme Court resolved its jurisdiction to hear a constitutional challenge to a new federal agency but had no occasion to address a federal court's exercise of equitable discretion to deny injunctive or declaratory relief. Here, the D.C. district court's subject-matter jurisdiction to decide the constitutional challenge to Title X is undisputed.

By now it is well settled that "[a] court may . . . in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere." *Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *see* 11A

Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 2944, at 84–85 (3d ed. 2013) ("Wright, et al."); *cf. Nat'l Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689, 704 (D.C. Cir. 1971). For the following reasons, Morgan Drexen fails to show that the district court abused its discretion in concluding that Morgan Drexen had an adequate remedy at law in the California enforcement action and that it suffered no irreparable injury from the denial of the requested relief.

**A.**

Entitlement to a permanent injunction rests upon Morgan Drexen showing:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc.*, 547 U.S. at 391. Failing to satisfy any factor is grounds for denying relief. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312–13 (1982). "If a less drastic remedy . . . [is] sufficient to redress [the] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010).

Morgan Drexen could, and did, assert its constitutional challenge to Title X of the Dodd-Frank Act as a defense in a motion filed in the California district court to dismiss the Bureau's enforcement action. It is true that at the time Morgan Drexen sued the Bureau in the D.C. district court, the

availability of this alternative remedy was uncertain. An enforcement action by the Bureau appeared likely, but in the meantime Morgan Drexen's potential penalties under the Dodd-Frank Act were accumulating daily, *see* 12 U.S.C. § 5565(c). "When enforcement actions are imminent — and at least when repetitive penalties attach to continuing or repeated violations and the moving party lacks the realistic option of violating the law once and raising its federal defenses — there is no adequate remedy at law." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992). Hence, courts will avoid subjecting regulated parties to the "Hobson's choice" between "continually violat[ing] the . . . law and expos[ing] themselves to potentially huge liability" pending agency action "or violat[ing] the law once as a test case and suffer[ing] the injury of obeying the law during the pendency of the proceedings and any further review." *Id.*; *cf. Sackett v. EPA*, 132 S. Ct. 1367, 1372 (2012). Morgan Drexen, however, was relieved of the Hobson's choice once the Bureau filed the enforcement action, fewer than thirty days after Morgan Drexen filed its complaint. *See Hastings v. Judicial Conference of the United States*, 770 F.2d 1093, 1102 (D.C. Cir. 1985). At that point, it no longer "faced the . . . troubling question of whether it was willing to risk serious penalties in order to obtain . . . a hearing at all." *See CSI Aviation Services, Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 413–14 (D.C. Cir. 2011). The D.C. district court dismissed the complaint eight weeks after the Bureau filed its enforcement action.

Morgan Drexen does not maintain that waiting for a decision from the district court in California caused it irreparable injury. Rather, it maintains that "'[i]n determining whether prosecution of a suit in another forum should be preliminarily enjoined . . ., [the preliminary injunction factors] are of secondary significance,'" and "'[t]he primary factor to be weighed is the convenience of the parties and the courts.'" Appellants' Br. 48 (second alteration in original) (quoting

*Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620, 622 n.3 (D.C. Cir. 1975)). Taken on those terms, Morgan Drexen has pointed to no inconvenience in litigating its constitutional challenge in the California district court. The D.C. district court's decision relieved it of litigating overlapping issues in two federal forums without prejudice to its challenge, and judicial economy was fostered.[3]

---

[3] Other attempts by Morgan Drexen in its reply brief to show irreparable injury fail procedurally and substantively. The Bureau had no opportunity to respond in its brief to Morgan Drexen's arguments in its reply brief, and Morgan Drexen offers no reason, much less an extraordinary one, for its failure to raise these arguments in its opening brief. Under these circumstances, the court will not consider arguments first raised in a reply brief. *See, e.g.*, *CTS Corp. v. EPA*, 759 F.3d 52, 60 (D.C. Cir. 2014); *United States v. Whren*, 111 F.3d 956, 958 (D.C. Cir. 1997). Even assuming Morgan Drexen's arguments are properly before the court, they are unpersuasive. Morgan Drexen maintains that being forced to litigate in California irreparably injures it, but once the Bureau filed its enforcement action, Morgan Drexen was constrained to litigate in either the D.C. or California federal forum and suffers no greater injury in California than here. Precedent supporting interlocutory review under the collateral order doctrine, upon which Morgan Drexen relies, is inapposite; this court lacks jurisdiction to review appeals from the Central District of California. *See* 28 U.S.C. § 1294. Morgan Drexen's bare assertion that the unavailability of immediate appeal renders a remedy inadequate is contrary to precedent. As this court noted in a related context, "irreparable harm must be 'greater than the harm suffered by any litigant forced to wait until the termination of the [proceedings] before challenging interlocutory orders it considers erroneous.'" *I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 25 (D.C. Cir. 1986) (alteration in original) (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379 n.13 (1981)); *see Sibley v. Lando*, 437 F.3d 1067, 1071 & n.5, 1074 (11th Cir. 2005). Morgan Drexen has not elaborated on its claimed entitlement to immediate appellate review beyond reference to its

Morgan Drexen also maintains that the district court erred in relying on *Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987). *See* Appellants' Br. 46–47. In *Deaver*, this court refused to hear a separation-of-powers challenge to provisions of the Ethics in Government Act in a suit for declaratory and injunctive relief to enjoin the independent counsel from filing an indictment. *Id.* at 66–67. *Deaver* is not controlling as to all pre-emptive challenges to likely civil enforcement. *See Morales*, 504 U.S. at 381; *cf. CSI Aviation Servs., Inc.*, 637 F.3d at 412–14. Still, the district court could properly view *Deaver* as a "parallel case," *Morgan Drexen, Inc.*, 979 F. Supp. 2d at 112, insofar as respect for the final judgment rule and principles of constitutional avoidance apply in the civil as well as the criminal context, *see id.* at 113–14. The district court noted that Morgan Drexen, like the plaintiff in *Deaver*, had an opportunity to raise its constitutional challenge as "a preliminary defense," *id.* at 114 (citing FED. R. CRIM. P. 12(b) and FED. R. CIV. P. 12(b)(6)), and it rejected Morgan Drexen's "attempt to create a special category of review for facial constitutional challenges," *id.* at 115. The district court's reliance on *Deaver*'s reasoning with respect to applicable equitable principles did not render its decision to dismiss Morgan Drexen's request for injunctive relief an abuse of discretion.

litigation costs, *see* Reply Br. 23, which cannot constitute irreparable injury, *cf. Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 23–24 (1974). To the extent Morgan Drexen maintains it was unable to argue the equities in its motion to dismiss, it misunderstands the posture of its case. Equitable factors come into play when parties dispute relief. The district court in California, having rejected the constitutional challenge to Title X, had no occasion to examine the appropriate remedy. That Morgan Drexen's motion to dismiss was denied does not demonstrate that the motion to dismiss procedure was inadequate as a matter of law. *Cf. id.* at 25.

**B.**

The Declaratory Judgment Act provides that a federal court, "[i]n a case of actual controversy within its jurisdiction, . . . upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added); *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007); *see also Wilton*, 515 U.S. at 286. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286. "The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface." *Id.* at 286–87. A court's exercise of discretion in granting declaratory relief is guided by "a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power," or in other words, informed by the court's sense of "practicality and wise judicial administration." *Id.* at 287–88 (citation and internal quotation marks omitted); *see also MedImmune, Inc.*, 549 U.S. at 136.

In *Hanes Corp. v. Millard*, 531 F.2d 585 (D.C. Cir. 1976), this court adopted a non-exclusive list of "factors relevant to the propriety of granting a declaratory judgment":

> whether it would finally settle the controversy between the parties; whether other remedies are available or other proceedings pending; the convenience of the parties; the equity of the conduct of the declaratory judgment plaintiff; prevention of procedural fencing; the state of the record; the degree of adverseness between the parties; and the public importance of the

question to be decided.

*Id.* at 591 n.4 (internal quotation marks omitted). Although every factor need not be considered and others may be, *see, e.g.*, *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 401–02 (D.C. Cir. 2012), these factors focus on the usefulness of a declaratory judgment, the role of such relief in ending the dispute between the parties, and the incentives for parties' behavior. *See, e.g.*, *President v. Vance*, 627 F.2d 353, 364 n.76 (D.C. Cir. 1980).

Applying the *Hanes* factors, the district court reasonably concluded that declaratory relief was inappropriate. First, an adjudication in the District of Columbia would not "finally settle the controversy" and could result in "piecemeal litigation" if the D.C. district court ruled in the Bureau's favor, allowing the enforcement action in California to continue. *Morgan Drexen, Inc.*, 979 F. Supp. 2d at 117 (citations and internal quotation marks omitted). Second, the enforcement action in California could resolve all of the issues in the case. *Id.* Third, Morgan Drexen filed its complaint in the D.C. district court on the eve of enforcement. *See id*. at 118–19 & n.5. And finally, declining to exercise jurisdiction would serve the public interest by avoiding a potentially unnecessary decision on constitutional issues because Morgan Drexen might prevail in the California enforcement action on the basis of one of its non-constitutional defenses. *See id.* at 119 n.6. The district court concluded that the only factor favoring Morgan Drexen was that the state of the record was more advanced in the D.C. case but decided this counted for little because declining to issue a declaratory judgment would not "severe[ly]" delay adjudication of Morgan Drexen's claims. *Id.* at 119. All of the other factors were in equipoise. *See id.* at 117–18, 119 n.6.

Morgan Drexen's objections fall wide of the mark. It maintains that its challenge to the constitutionality of Title X is a matter of sufficient public importance to warrant declaratory relief and that the district court failed to accord proper weight to the fact that it filed its suit "before [the Bureau], by its own admission, had even determined whether it would bring an enforcement action." Appellants' Br. 45. Parties have no inviolable right to a declaratory judgment on facial constitutional claims. *See Flynt v. Rumsfeld*, 355 F.3d 697, 705 (D.C. Cir. 2004). Nor is the public importance of the lawsuit dispositive. *See Wilderness Soc'y v. Morton*, 479 F.2d 842, 887 (D.C. Cir. 1973). The district court reasonably could conclude that the importance of the constitutional challenge was counterbalanced by the importance of avoiding unnecessary constitutional decision-making. *Morgan Drexen, Inc.*, 979 F. Supp. 2d at 119 n.6; *cf. Wallace v. Lynn*, 507 F.2d 1186, 1190–91 (D.C. Cir. 1974).

Nor was it an abuse of discretion for the district court to deny declaratory relief when Morgan Drexen was the first to file. The timing of the declaratory plaintiff's suit is only one consideration bearing on "practicality and wise judicial administration." *See Wilton*, 515 U.S. at 288. As one well-recognized authority has suggested, "the real question for the court is not which action was commenced first but which will most fully serve the needs and convenience of the parties and provide a comprehensive solution of the general conflict." 10B Wright, et al., *supra*, § 2758, at 530–31 (3d ed. 1998). "The anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure. It deprives the plaintiff of his traditional choice of forum and timing, and it provokes a disorderly race to the courthouse." *Hanes,* 531 F.2d at 592–93; *see Am. Auto. Ins. Co. v. Freundt*, 103 F.2d 613, 617 (7th Cir. 1939). Because the Bureau has filed an enforcement action that

promises to resolve the legality of Morgan Drexen's conduct, "[t]his is not a situation in which a declaratory plaintiff will suffer injury unless legal relations are clarified; [Morgan Drexen] do[es] not currently 'act at [its] peril,'" *AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004) (citation omitted); *see also Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749–50 (7th Cir. 1987); *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967).

Further, the district court's findings that "Morgan Drexen was aware of the likelihood of a Bureau enforcement action" when it filed the complaint and that it had engaged in procedural fencing are supported by the record and not clearly erroneous. The Bureau notified Morgan Drexen on April 22, 2013, that it was considering an enforcement action. Morgan Drexen indicated its amenability to settlement discussions on May 8, 2013, and the parties continued their discussions until mid-July 2013. According to an undisputed statement by the Bureau in a July 8, 2013, email, Morgan Drexen indicated to the Bureau that it would continue to produce certain documents throughout the month. Yet, on July 22, Morgan Drexen sued the Bureau in the D.C. district court. The district court's finding that Morgan Drexen engaged in procedural fencing was not clearly erroneous. *See AmSouth Bank*, 386 F.3d at 788, 790 (collecting cases); *Freundt*, 103 F.2d at 617.

Accordingly, we affirm the dismissal of the complaint, because Pisinski lacks Article III standing to pursue the constitutional challenge to Title X of the Dodd-Frank Act and because Morgan Drexen failed to show the district court abused its discretion in concluding that Morgan Drexen had an adequate remedy at law in the enforcement action filed by the Bureau.

KAVANAUGH, *Circuit Judge*, dissenting: Kimberly Pisinski is an attorney. She has brought a lawsuit challenging the constitutionality of the Consumer Financial Protection Bureau. The majority opinion holds that she lacks standing. I respectfully disagree. In my view, Pisinski has standing. She contracts with a company known as Morgan Drexen and works together with Morgan Drexen employees to provide debt settlement and bankruptcy services to consumers who are in debt. These services are intended to help people in debt negotiate better terms with their creditors. Consumers are charged a fee for some of these services. The Bureau claims that the kind of services in which Pisinski and Morgan Drexen engage – with an up-front fee paid by consumers – is illegal. The Bureau therefore is regulating a business that Pisinski engages in. That is enough for standing. We have a tendency to make standing law more complicated than it needs to be. When a regulated party such as Pisinski challenges the legality of the regulating agency or of a regulation issued by that agency, "there is ordinarily little question" that the party has standing, as the Supreme Court has indicated. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). So it is here.