# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Submitted November 8, 2019　　　Decided February 7, 2020

No. 19-1009

NARRAGANSETT INDIAN TRIBAL HISTORIC PRESERVATION
OFFICE,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

TENNESSEE GAS PIPELINE COMPANY, LLC,
INTERVENOR

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Anne Marie Garti* was on the briefs for petitioner.

*James P. Danly*, General Counsel, Federal Energy
Regulatory Commission, *Robert H. Solomon*, Solicitor, and
*Jared B. Fish*, Attorney, were on the brief for respondent.

*Brian D. O'Neill*, *Michael R. Pincus*, and *Michael
Diamond* were on the brief for respondent-intervenor
Tennessee Gas Pipeline Company, LLC.

2

Before: SRINIVASAN, MILLETT, and PILLARD, *Circuit Judges*.[1]

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: The Narragansett Indian Tribal Historic Preservation Office ("Narragansett Tribe") petitions for review of an order of the Federal Energy Regulatory Commission denying its motion to intervene in a natural gas pipeline certificate proceeding after the certificate to build a pipeline had issued. The Narragansett Tribe argues that, in authorizing Tennessee Gas Pipeline Company, LLC ("Tennessee Gas") to build a pipeline across landscapes that hold sacred significance to the Tribe, the Commission denied it the procedural protections of the National Historic Preservation Act ("Preservation Act"), 54 U.S.C. §§ 300101 *et seq.*

While the Narragansett Tribe awaited the Commission's action on its pending motion to intervene and its separate motion for reconsideration of an order allowing construction to commence, Tennessee Gas completed its pipeline. In the process, Tennessee Gas irreparably destroyed more than twenty ceremonial stone features. With its effort to save those ceremonial landscapes lost, the Narragansett Tribe petitioned this court for review, seeking only an order compelling the Commission to amend its regulations so that it cannot repeat the alleged violations of the Preservation Act in the future.

The problem for the Narragansett Tribe is that it lacks standing to seek such relief. By the time the Narragansett Tribe filed its petition for review, the ceremonial landscapes had been

---

[1] This petition for review was considered on the record from the Federal Energy Regulatory Commission and on the briefs of the parties. *See* FED. R. APP. P. 34(a)(2); D.C. CIR. R. 34(j).

irremediably destroyed. And the Narragansett Tribe has not shown a substantial risk that a similar disagreement between it and the Commission will recur. We therefore must dismiss the petition for lack of jurisdiction.

**I**

Section 106 of the Preservation Act, 54 U.S.C. § 306108, "requires federal agencies to consider the effect of their actions on certain historic or culturally significant sites and properties (expressly including those of Indian tribes) and to seek ways to mitigate those effects." *City of Tacoma v. FERC*, 460 F.3d 53, 69 (D.C. Cir. 2006). In carrying out those responsibilities, federal agencies must "consult with any Indian tribe * * * that attaches religious and cultural significance to" potentially affected properties. 54 U.S.C. § 302706(b). Agencies "must complete the [S]ection 106 process 'prior to the approval of the expenditure of any Federal funds on [a project] or prior to the issuance of any license.'" 36 C.F.R. § 800.1(c) (quoting 54 U.S.C. § 306108).

In March 2016, the Commission issued a certificate under Section 7 of the Natural Gas Act, 15 U.S.C. § 717f, authorizing Tennessee Gas to build and operate its Connecticut Expansion Project. The Project comprises approximately 13 miles of pipeline loops—that is, pipeline segments built alongside existing pipelines to increase their capacity. At issue here is a 3.81-mile-long pipeline segment near Sandisfield, Massachusetts.

This case arises from the Narragansett Tribe's attempt to save from destruction 73 ceremonial stone landscapes of cultural and religious importance that were in the pipeline's approved path. Tennessee Gas proposed to mitigate the harm by removing the features during construction and replacing them later. But the Narragansett Tribe explained why, as a

religious matter, that approach was equivalent to destroying the features outright:

> In our ancestral tradition, these ceremonial stone groupings are "prayers" to our Creator and Earth Mother calling for balance and harmony and should be left to their spiritual work. If they are moved, their ceremonial/spirit work is then broken[;] it cannot likely be re-connected as we are not privy to the original trauma that called forth these specific ancient ceremonial responses. If dismantled and rebuilt (as [Tennessee Gas] has offered), what then would be created is *an artistic replica* of an active ceremonial stone grouping that was put in place by long ago ancestors for a purpose that we, today, may be incapable of identifying or re-connecting with its original (and still active) specific spiritual task.

J.A. 339.

On April 6, 2017, Tennessee Gas filed with the Commission a request to proceed with construction. Four days later, the Narragansett Tribe moved to intervene. The Narragansett Tribe argued that the Commission had failed to satisfy its consultation responsibilities under the Preservation Act and that authorizing construction in the Sandisfield portion would irreparably harm the Narragansett Tribe.

The Commission granted Tennessee Gas's request and authorized construction to start on April 12, 2017, including in the area containing the sacred landscapes. On April 24, 2017, the Massachusetts PipeLine Awareness Network ("Mass PLAN"), an existing party to the proceedings, requested rehearing of that order and moved for a stay of construction, raising many of the same objections to the pipeline project as

the Narragansett Tribe.  The Narragansett Tribe filed its own request for rehearing of the construction order two weeks later.

While the Narragansett Tribe and Mass PLAN awaited Commission action on their still-pending motions, including Mass PLAN's request for a stay of construction, Tennessee Gas completed construction of the entire pipeline, destroying more than twenty ceremonial stone landscapes in the process. Construction was completed no later than October 31, 2017, when the Commission authorized Tennessee Gas to begin service on the pipeline.  Not until two and a half months later did the Commission deny the Narragansett Tribe's motion to intervene, reject its rehearing request, and deny Mass PLAN's rehearing request.  The Commission then dismissed the motion to stay construction as moot.

On February 2, 2018, the Narragansett Tribe timely requested rehearing of the denial of its motion to intervene. Almost ten months after that, the Commission denied rehearing.  On January 15, 2019, the Narragansett Tribe timely filed a petition for review of the Commission's April 2017, January 2018, and November 2018 orders.

**II**

To establish Article III standing, a petitioner "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  The Narragansett Tribe cannot satisfy those requirements because the relief it seeks cannot redress the injury it suffered.

Although the destruction of the ceremonial landscapes certainly qualifies as an injury in fact, it is no longer redressable.  Because the Commission allowed Tennessee Gas

to complete construction of the pipeline while motions for relief remained pending, the damage to the ceremonial landscapes has been done.[2]

That problem "may sound like one of mootness—a justiciable controversy existed but no longer remains—but the timing makes [it] one of standing." *Advanced Mgmt. Tech., Inc. v. Federal Aviation Admin.*, 211 F.3d 633, 636 (D.C. Cir. 2000). "Standing is assessed 'at the time the action commences,'" which in the case of a petition for review is "the time [the petitioner] sought relief from an Article III court[.]" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000)). By the time the Narragansett Tribe first filed its petition in this court, the construction was complete and the damage done.

So the Tribe's claim became moot while the matter was still pending before the Commission and, as a result, the Narragansett Tribe lost standing to seek review in this court, unless it could identify an ongoing or future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 107–110 (1983); *Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 689 (D.C. Cir. 2015) (To establish a future injury, "a plaintiff must show that there is a 'substantial risk' that the harm will occur."); *see also Utility Workers Union of America Local 464 v. FERC*, 896 F.3d 573, 577 (D.C. Cir. 2018) ("[A petitioner] must support each

---

[2] The Narragansett Tribe does not challenge the timing of the Commission's decision. *See generally Allegheny Defense Project v. FERC*, 943 F.3d 496, 497 (D.C. Cir. 2019) (per curiam) (ordering rehearing en banc on the question whether "the Natural Gas Act, and specifically 15 U.S.C. § 717r(a), authorizes [the Commission] to issue tolling orders that extend the statutory 30-day period for Commission action on an application for rehearing").

element of its claim to standing by affidavit or other evidence[.]") (internal quotation marks omitted).

The Narragansett Tribe has not done so. It does not assert a continuing or future injury from the pipeline's operation itself and, in fact, it specifically eschews asking this court to "vacate the order for a pipeline that is in operation[.]" Narragansett Tribe's Br. 57. Instead, the Narragansett Tribe requests "that the remedy focus on the Commission's systemic violations[,]" seeking only an order from this court requiring the Commission to amend its regulations governing consultations with federally recognized Indian tribes. Narragansett Tribe's Br. 57–58. But revised regulations do nothing to repair the already completed harm to the Narragansett Tribe's cultural and religious interests. And the Narragansett Tribe has no standing to seek purely prospective relief in the form of amended regulations. Standing to seek such forward-looking injunctive relief requires the Narragansett Tribe to "show [that it] is suffering an ongoing injury or faces an immediate threat of injury." *Morgan Drexen*, 785 F.3d at 689 (internal quotation marks omitted). For a future injury, that means submitting evidence "show[ing] that there is a 'substantial risk' that the harm will" recur. *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). The Tribe, though, has not shown any prospect of the conflict between it and the Commission arising again, much less a "real and immediate threat of again being" subject to the same conduct, *Lyons*, 461 U.S. at 110; *see also id*. at 107–110.

Trying a different tack, the Tribe argues that procedural rights claims are subject to a less demanding redressability requirement. That is true. But a wholly speculative prospect of redress still does not pass muster.

What the cases recognizing a more relaxed redressability requirement for procedural rights claims mean is that, instead of needing to establish that compelling the agency to follow the correct procedure *would* lead to a substantive result that favors the petitioner's concrete interests, the petitioner need only show that its concrete interests *could* be better protected.

> The person who has been accorded a procedural right *to protect his concrete interests* can assert that right without meeting all the normal standards for redressability and immediacy. Thus, under our case law, one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement *will* cause the license to be withheld or altered, and even though the dam will not be completed for many years.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992) (emphasis added); *see also Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014) (The relaxed redressability requirement means that the petitioner need not show that "correcting the procedural violation would necessarily alter the final effect of the agency's action on the [petitioner's] interest[.]").

In other words, the relaxed redressability requirement is met when correcting the alleged procedural violation *could* still change the substantive outcome in the petitioner's favor; the petitioner need not go further and show that it *would* effect such a change. *See, e.g.*, *American Rivers v. FERC*, 895 F.3d 32, 41–42 (D.C. Cir. 2018) (holding that petitioners satisfied the relaxed redressability requirement because vacating the challenged licensing order and requiring the Commission to

follow the correct procedure "could [lead it to] change its mind") (internal quotation marks omitted); *Center for Biological Diversity v. EPA*, 861 F.3d 174, 185 (D.C. Cir. 2017) (holding that the relaxed redressability requirement was satisfied because the agency "*could* reach a different conclusion" if the court vacated its order); *Sierra Club v. FERC*, 827 F.3d 36, 44 (D.C. Cir. 2016) (same).

The problem here is that, unlike in those cases, fixing the alleged defect in the Commission's regulatory procedures could not possibly prevent or mitigate the harm to the Narragansett Tribe's cultural and religious interests. *See Humane Soc'y of the United States v. Babbitt*, 46 F.3d 93, 100–101 (D.C. Cir. 1995) (holding that a procedural injury was not redressable because there was "no possibility" that the already completed action could be undone). Nor has the Narragansett Tribe identified a substantial risk of injury to be redressed.

The Narragansett Tribe's three remaining arguments fare no better. First, it argues that its injury is redressable because "remand may be required for some of the procedural errors in this case[.]" Narragansett Tribe's Reply Br. 8 (formatting modified). But aside from its request that the Commission revise its regulations, the Narragansett Tribe does not explain how any correction of procedural course would help it or what it could obtain out of a remand.

Second, the Tribe contends that we could "alleviate the cause of [its] harms by granting party status." Narragansett Tribe's Reply Br. 8. It wants that status "so its Petition can be reviewed on the merits." Narragansett Tribe's Br. 57. Although a successful challenge to the Commission's denial of intervention could lead to party status, there is no case on the merits left in which the Narragansett Tribe could intervene. Its merits challenges revolved around preserving the ceremonial

landscapes—claims that are now moot. Given that, granting party status would not offer any redress for the Narragansett Tribe's identified injury.

Third, the Narragansett Tribe requests attorneys' fees and costs. *See* 54 U.S.C. § 307105 (authorizing an award of fees and costs to a party that "substantially prevails" in an action brought in any federal district court to enforce the Preservation Act). That changes nothing because the prospect of recovering fees or costs does not "create an Article III case or controversy where none exists on the merits of the underlying claim[.]" *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990); *see also District of Columbia v. Jeppsen ex rel. Jeppsen*, 514 F.3d 1287, 1289 (D.C. Cir. 2008) ("Article III requires that the requested remedy redress the injury in fact of which a plaintiff complains; when intervening events have mooted the plaintiff's underlying claim, the plaintiff's continuing interest in attorneys' fees does not support her continued standing to pursue the underlying claim.") (formatting modified).

## III

In sum, the Narragansett Tribe lacks standing because the cultural and religious injury it suffered can no longer be redressed by any of the relief it seeks from this court. Changing the Commission's Section 106 consultation process going forward would do nothing to redress the already-completed loss of the ceremonial stone landscapes. And the Narragansett Tribe has demonstrated no other basis for its standing to obtain prospective injunctive relief. For those reasons, the petition for review must be dismissed.

*So ordered.*