# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 11, 2011       Decided December 13, 2011

No. 10-5383

FEDERAL TRADE COMMISSION,
APPELLEE

v.

CHURCH & DWIGHT CO., INC.,
APPELLANT

———

Consolidated with 11-5008

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:10-mc-00149)

———

*Carl W. Hittinger* argued the cause for appellant. With him on the briefs was *Earl J. Silbert*.

*Mark S. Hegedus*, Attorney, Federal Trade Commission, argued the cause for appellee. With him on the brief were *Willard K. Tom*, General Counsel, *David C. Shonka*, Principal Deputy General Counsel, *John F. Daly*, Deputy General Counsel, and *Leslie Rice Melman*, Assistant General Counsel.

*R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: SENTELLE, *Chief Judge*, GINSBURG,[*] *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: Church and Dwight Co., Inc., the leading manufacturer of condoms in the United States, appeals an order of the district court enforcing a subpoena and an accompanying civil investigative demand (CID) issued by the Federal Trade Commission insofar as the FTC would require it to produce information related to its sales of products other than condoms. Church & Dwight contends such information is not reasonably relevant to the Commission's investigation into its potentially monopolistic practices in the market for condoms. Because the Commission's inquiry lawfully extends to the possibility Church & Dwight is engaged in the exclusionary bundling of rebates to retailers that sell condoms and other Church & Dwight products, we hold the district court did not err in finding that the information on products other than condoms was reasonably relevant to the Commission's investigation. Accordingly, we affirm the order enforcing the subpoena and the CID against Church & Dwight as issued.

## I. Background

Church & Dwight sells condoms primarily under its Trojan brand name. According to the Commission, the Company accounts for "at least 70%" of the latex condoms

---

[*] As of the date the opinion was published, Judge Ginsburg had taken senior status.

sold in the United States.[*]  In order to market its condoms, Church & Dwight offers retailers a discount based upon the amount of shelf space they devote to its condoms. Church & Dwight also sells a variety of other products, including such consumer products as cat litter and toothpaste.

In June 2009 the Commission issued a "Resolution Authorizing Use of Compulsory Process in a Nonpublic Investigation" in order to determine whether Church & Dwight

> has attempted to acquire, acquired, or maintained a monopoly in the distribution or sale of condoms in the United States, or in any part of that commerce, through potentially exclusionary practices including, but not limited to, conditioning discounts or rebates to retailers on the percentage of shelf or display space dedicated to Trojan brand condoms and other products distributed or sold by Church & Dwight, in violation of Section 5 of the Federal Trade Commission Act ....

Pursuant to the Resolution, the Commission issued a subpoena duces tecum seeking, among other things, production of documents related to Church & Dwight's sales and distribution of condoms in the United States and Canada. At the same time the Commission issued a CID seeking information about cost, pricing, production, and sales of the Company's condoms in the United States and Canada.

---

[*] Although its inquiry into the market for condoms is not limited to the latex variety of the product, the Commission has not provided an estimate of Church & Dwight's share of a market that includes both latex and non-latex condoms.

Although the Commission did not explicitly request information on products other than condoms, Specification R of the subpoena provides: "All Documents responsive to this request ... shall be produced in complete form, unredacted unless privileged ...."

Church & Dwight turned over to the Commission documents and data sets relating to its condom business with the information on other products redacted. Church & Dwight petitioned the Commission either to limit or to quash the subpoena and the CID. The Commission denied that request and petitioned the district court to enforce the subpoena and the CID.

In the district court, Church & Dwight argued, "Properly read, the FTC's Resolution's language concerning 'Trojan brand condoms and other products distributed or sold by Church & Dwight' does not include irrelevant non-condom products such as toothpaste, cat litter, baking soda and detergents." The district court, finding the information on products other than condoms in documents with information pertaining to condoms was "reasonably relevant" to the Commission's investigation and the request was not "unduly burdensome," granted the petition for enforcement.

## II. Analysis

Church & Dwight appeals the district court's order insofar as the subpoena and the CID relate to its products other than condoms. The Company first contends the district court departed from the legal standard prescribed in precedent because it (1) did not interpret the scope of the Resolution, (2) did not identify the materials sought in the subpoena and the CID, and (3) required that the materials sought in the subpoena and the CID be only plausibly, rather than

reasonably, relevant to the Commission's investigation. It also argues that, even if the district court applied the correct legal standard, the court clearly erred when it found the disputed materials were in fact reasonably relevant to the investigation.

A.  Standards of Review

Whether the district court applied the correct standard in deciding an investigative subpoena should be enforced is a question of law, which we decide de novo. *See U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 253 (D.C. Cir. 2005); *FTC v. Texaco*, 555 F.2d 862, 876 n.29 (D.C. Cir. 1977) (en banc). We review the district court's determination of relevance, a question of fact, only for clear error. *See FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992).

In the last-cited case we explained "a district court must enforce a federal agency's investigative subpoena if the information sought is 'reasonably relevant'—or, put differently, 'not plainly incompetent or irrelevant to any lawful purpose of the [agency]'—and not 'unduly burdensome' to produce." 965 F.2d at 1089 (brackets in original) (internal citations omitted) (quoting *Texaco*, 555 F.2d at 872**,** 873 n.23, 881). We also reiterated a long-established point quite pertinent to the dispute here: "[T]he validity of Commission subpoenas is to be measured against the purposes stated in the resolution ...." 965 F.2d at 1092 (quoting *FTC v. Carter*, 636 F.2d 781, 789 (D.C. Cir. 1980)).

B.  Scope of the Resolution

The main dispute in this case is whether the Commission's inquiry, as defined by the Resolution, extends

to Church & Dwight's products other than condoms. The Resolution indicates the Commission is investigating various of Church & Dwight's practices, including its "conditioning [of] discounts or rebates to retailers on the percentage of shelf or display space dedicated to Trojan brand condoms and other products ...." Despite the seemingly unqualified reach of the phrase "and other products," the Company argues we should interpret it narrowly to mean "and other [condom] products." For its part, the Commission maintains the Resolution comprehends an investigation into Church & Dwight's possible bundling of rebates based upon the retailer's sales of both its condoms and its other products. Under the Commission's interpretation, the information concerning products other than condoms is unquestionably relevant to its investigation, and the district court was correct to enforce the subpoena and the CID.

As an initial matter, Church & Dwight is incorrect in claiming the district court "failed to interpret" the Resolution; the district court simply interpreted the Resolution as being more broad than Church & Dwight had argued. The question properly before us is whether the district court correctly interpreted the Resolution to include an inquiry that implicated Church & Dwight products other than condoms.

Contrary to the Company's urging, we defer to the Commission's interpretation of its own Resolution. *Cf. FTC v. Ken Roberts Co.*, 276 F.3d 583, 586 (D.C. Cir. 2001) ("courts of appeals have consistently deferred to agency determinations of their own investigative authority"); *EEOC v. Lutheran Social Servs.*, 186 F.3d 959, 965 (D.C. Cir. 1999) ("agency's interpretation of relevance of subpoena deserves deference because the scope of the investigation is very much dependent on the agency's interpretation and administration of its authorizing substantive legislation" (internal quotation

marks, alterations, and citation omitted)). So long as the material the Commission seeks is "relevant to the *investigation*—the boundary of which may be defined quite generally," *Invention Submission*, 965 F.2d at 1090, *see also Texaco*, 555 F.2d at 874 n.26 ("resolutions of [a broad] sort are not uncommon in the investigative process"), the district court must enforce the agency's demand.

The Commission maintains its Resolution contemplates an investigation into the possibility Church & Dwight is engaged in exclusionary practices in which products other than condoms may play a role. Such practices include bundling discounts, as in *LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003) (en banc), and tying sales, as in *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992). Church & Dwight replies that, because the initial clause of the Resolution authorizes an investigation into illegal monopolization "in the distribution or sale of condoms ... through potentially exclusionary practices including, but not limited to, [shelf-space discounts] on Trojan brand condoms and other products," the last two words must refer only to Church & Dwight's condom brands other than Trojan. There is, however, a reasonable interpretation of the Resolution that is less narrow than the one Church & Dwight favors. Although we will not interpret the scope of the Resolution so broadly as to enable the agency to investigate a matter beyond the reach of the laws it enforces, *see Invention Submission Corp.*, 965 F.2d at 1089, we note that an inquiry into the bundling of rebates on condoms and other types of products with the purpose of sustaining market power in the market for condoms is arguably within the condemnation of the Sherman Act as the Third Circuit construed it in *LePage's*, 324 F.3d at 154–57 (concluding 3M's practice of bundling rebates for multiple products in order to maintain its

monopoly in one of them was an exclusionary practice in violation of § 2 of the Sherman Act).[*]

Church & Dwight suggests we should reject this interpretation of the Resolution because the Commission's subpoena and CID are too narrowly focused to support a case premised upon a theory of bundling that includes products other than condoms. The Company reasons the Commission, had it wanted to pursue such a theory, would have requested information on products other than condoms even when that information appears in documents that contain no information on condoms. This argument fails because we do not require the Commission to seek in one document request all the information it might need in order successfully to establish a violation at trial.

*LePage's* is of course not the law of this circuit, and it has been roundly criticized, *see, e.g.,* Antitrust Modernization Comm'n, *Report and Recommendations* 94 (2007) ("The lack of clear standards regarding bundling, as reflected in *LePage's v. 3M*, may discourage conduct that is procompetitive or competitively neutral and thus may actually harm consumer welfare"); Bruce H. Kobayashi, *The Law and Economics of Predatory Pricing*, *in* ANTITRUST LAW AND ECONOMICS 116, 148 (Keith N. Hylton ed., 2009) ("The

---

[*] The Commission's contention its Resolution also comprehends an investigation into potential tying is less than persuasive. In a tying case, the plaintiff must allege the defendant company used market power in the tying product to gain market power in the tied product. *See Eastman Kodak*, 504 U.S. at 464 & n.9. Here, however, the Commission indicated in its Resolution it is investigating only the acquisition or maintenance of a monopoly in the condom market; that is the only product market in which the FTC has alleged Church & Dwight has market power, and the Commission has not identified any potentially tied product.

potential for liability will result in [firms with sufficient market power and multiple product lines] being deterred from using bundling that would have led to reduced prices for consumers and higher welfare"); Richard A. Epstein, *Monopoly Dominance or Level Playing Field? The New Antitrust Paradox*, 72 U. CHI. L. REV. 49, 71 (2005) ("highly unlikely that 3M would tailor practices that cover six of its departments solely because of the effects that it would have on" the one product market in which it competed with LePage's); Daniel L. Rubinfeld, *3M's Bundled Rebates: An Economic Perspective*, 72 U. CHI. L. REV. 243, 254–56, 262–64 (2005) (by not following test for predatory conduct from *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993), or some similar standard for predatory conduct, *LePage's* condemns behavior that does not obviously reduce, and may even promote, consumer welfare). We need not, however, pass upon the merits of the rule in *LePage's* in order to resolve this case.

Because *LePage's* is the law in the Third Circuit, and because Church & Dwight sells both condoms and other consumer products within the Third Circuit, the Commission may lawfully investigate whether the Company's practices would constitute a violation of the law in that circuit. Although this court might someday reach a different resolution of the issue presented in *LePage's*, "a subpoena enforcement action is [generally] not the proper forum in which to litigate disagreements over an agency's authority to pursue an investigation. Unless it is patently clear that an agency lacks the jurisdiction that it seeks to assert, an investigative subpoena will be enforced." *Ken Roberts*, 276 F.3d at 584. We hold, therefore, the Resolution lawfully encompasses an investigation into whether Church & Dwight has bundled discounts for condoms and other products in

order to acquire or maintain a monopoly in the market for condoms in the United States.

C. Church & Dwight's Remaining Contentions

We can dispose of Church & Dwight's other contentions in short order. First, we reject the Company's contention the district court "never described" the materials sought in the subpoena and the CID; in fact, the district court described the disputed materials the Commission sought and the Company "seeks to redact" as "information from the documents [Church & Dwight] produce[d] regarding proprietary and confidential information on non-condom products …." *FTC v. Church & Dwight Co.*, 747 F. Supp. 2d 3, 8 (D.D.C. 2010) (internal quotation marks omitted). In any event, the Company does not actually dispute the identity of the materials at issue.

Second, Church & Dwight claims the district court's finding of relevance was based upon both a legal and a clear factual error. As for the legal error, the Company contends the district court was satisfied with mere "plausibility" instead of demanding the "reasonable relevance" required under *Texaco*. It bases this claim upon the following statement in the opinion of the district court: "[I]t is entirely plausible that information [concerning other products] appearing in the same document with relevant information concerning ... condoms would itself be relevant to the investigation." That statement is not inconsistent, however, with the correct legal standard, viz., that the "requested materials ... be reasonably relevant to the investigation," which appears in the next sentence of the court's opinion, followed by a citation to *Invention Submission.*

As for the factual error, the Company erroneously argues *Texaco* requires the district court to "perform an independent review" of the information sought and "articulate the reasons underlying a finding of relevancy" to the investigation. Again the Company would demand of the district court a more searching probe of the relation between the Commission's inquiry and the information sought than our precedents require or even allow. As we said in *Invention Submission*,

> the Commission has no obligation to establish precisely the relevance of the material it seeks in an investigative subpoena by tying that material to a particular theory of violation. *See Texaco*, 555 F.2d at 877. ... [I]n light of the broad deference we afford the investigating agency, it is essentially the respondent's burden to show that the information is irrelevant. *Cf. id.* at 882 ....

965 F.2d at 1090.

The present Resolution, as we have explained, contemplates an investigation into Church & Dwight's sales not only of condoms but also of other products. The information the Commission is seeking concerning those other products is obviously relevant to that investigation;[*] the district court had no obligation to belabor the obvious.

---

[*] The Commission also suggested at oral argument that the Company is required to produce information on products other than condoms even if that information is not directly relevant to its investigation because the Commission requested unredacted versions of documents containing at least some relevant information. We need not, however, reach the question whether the Commission's anti-redaction policy is permissible because we conclude the subpoena and CID at issue here are directed entirely

### III. Conclusion

Church & Dwight's claims fail because they rest upon an unduly narrow interpretation of the Resolution, one that is inconsistent with the principles laid out in *Texaco* and more recently applied in *Invention Submission*. The Commission contemplates an investigation into the bundling of rebates to retailers on sales of condoms and of other products, which may violate the Sherman Act as interpreted by the Third Circuit in *LePage's*. Therefore the district court did not err in finding that the information concerning products other than condoms was reasonably relevant to the Commission's inquiry. Accordingly, the order of the district court granting enforcement of the Commission's subpoena and the associated CID is in all respects

*Affirmed*.

---

toward information reasonably relevant to the Commission's investigation.