# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 2, 2017              Decided April 21, 2017

No. 16-5174

CONSUMER FINANCIAL PROTECTION BUREAU,
APPELLANT

v.

ACCREDITING COUNCIL FOR INDEPENDENT COLLEGES AND
SCHOOLS,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-01838)

———

*Lawrence DeMille-Wagman*, Senior Litigation Counsel, Consumer Financial Protection Bureau, argued the cause for appellant. With him on the briefs was *John R. Coleman*, Deputy General Counsel.

*Allyson B. Baker* argued the cause for appellee Accrediting Council For Independent Colleges and Schools. With her on the brief were *Andrew Hernacki*, *Benjamin E. Horowitz*, *Kimberly Culp Cloyd*, and *Kenneth J. Ingram*.

*Andrew J. Pincus*, *Ori Lev*, *Stephen C.N. Lilley*, *Matthew A. Waring*, *Kathryn Comerford Todd*, and *Steven P. Lehotsky* were on the brief for *amicus curiae* The Chamber of Commerce of the United States of America in support of appellee.

*Michael C. Gartner* was on the brief for *amicus curiae* Accrediting Council for Continuing Education & Training, Inc. ("ACCET"), et al. in support of appellee.

Before: HENDERSON and WILKINS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: The Consumer Financial Protection Bureau ("CFPB" or the "Bureau") issued a civil investigative demand to the Accrediting Council for Independent Colleges and Schools ("ACICS"), a non-profit organization that accredits for-profit colleges. The civil investigative demand's "Notification of Purpose" stated that the CFPB sought information relating to "unlawful acts and practices in connection with accrediting for-profit colleges." When ACICS refused to comply, the CFPB filed a petition to enforce the civil investigative demand. The district court denied the petition. Because the civil investigative demand did not comply with the governing statute, *see* 12 U.S.C. § 5562(c)(2), we affirm.

**I.**

While the Department of Education does not accredit for-profit colleges, the Secretary of Education recognizes national accrediting agencies that set accreditation standards for those for-profit institutions. *See Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Schs. & Colls.*, 781

3

F.3d 161, 171 (4th Cir. 2015); *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1044 (11th Cir. 2015); *see also* 20 U.S.C. § 1099b; 34 C.F.R. §§ 602.1–602.50. Indeed, the term "[a]ccredited" is defined in the Department's regulations as "[t]he status of public recognition that a nationally recognized accrediting agency grants to an institution or educational program that meets the agency's established requirements." 34 C.F.R. § 600.2; *see also id.* § 602.3. Recognized accrediting agencies are intended to be "reliable authorities regarding the quality of education or training offered by the institutions or programs they accredit." *Id.* § 602.1(a); *see also* 20 U.S.C. §§ 1001(c), 1099b(a). Importantly, students at accredited for-profit colleges are eligible to receive federal student aid funding. *See* 20 U.S.C. § 1002(b)(1)(D); 34 C.F.R. § 600.5(a)(6); *Career Educ., Inc. v. Dep't of Educ.*, 6 F.3d 817, 817–18 (D.C. Cir. 1993); *see also Urquilla-Diaz*, 780 F.3d at 1043–44.

ACICS is a non-profit organization that accredits for-profit colleges in the United States. A council consisting of fifteen commissioners carries out the organization's accreditation functions, while the organization's president, who also serves as the Chief Executive Officer, oversees the day-to-day operations. The Secretary has recognized ACICS as a national accreditor since 1956, although the Secretary withdrew ACICS's status as a recognized accreditor in 2016.

The most important aspect of ACICS's accreditation process is the "peer review" component, which involves volunteer evaluators from ACICS member institutions and non-member institutions reviewing other institutions. The confidential accreditation process includes a self-evaluation by the institution, an on-site visit, a review of the institution's operations, and a written report from the evaluators. After determining whether the institution complies with ACICS's

accrediting standards, the council makes a final accrediting decision. Relevant to this litigation, ACICS asserts that, as an accrediting agency, it plays no role in the student loan process.

The CFPB has investigated for-profit colleges for deceptive practices in connection with their student-lending activities. *See, e.g.*, *CFPB v. Corinthian Colls., Inc.*, No. 1:14-cv-7194, 2015 WL 10854380 (N.D. Ill. Oct. 27, 2015); *CFPB v. ITT Educ. Servs., Inc.*, No. 1:14-cv-292, 2015 WL 1013508 (S.D. Ind. Mar. 6, 2015). On August 25, 2015, the CFPB issued a civil investigative demand ("CID") to ACICS. The CID's "Notification of Purpose" stated:

> The purpose of this investigation is to determine whether any entity or person has engaged or is engaging in unlawful acts and practices in connection with accrediting for-profit colleges, in violation of sections 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536, or any other Federal consumer financial protection law. The purpose of this investigation is also to determine whether Bureau action to obtain legal or equitable relief would be in the public interest.

The CID included two interrogatories seeking to identify: (1) "all post-secondary educational institutions that [ACICS] has accredited since January 1, 2010," and (2) "all individuals affiliated with [ACICS] who conducted any accreditation reviews since January 1, 2010" for twenty-one enumerated institutions. The CID also informed ACICS that a company representative must be made available to provide oral testimony on ACICS's "policies, procedures, and practices relating to the accreditation of" seven enumerated institutions.

After receiving the CID, ACICS's counsel conferred with the CFPB to discuss compliance. These discussions proved fruitless, however, and ACICS subsequently petitioned the CFPB to set aside or modify the CID. *See* 12 U.S.C. § 5562(f); 12 C.F.R. 1080.6(e). The CFPB's Director, Richard Cordray, denied ACICS's petition on October 8, 2015, and ordered ACICS to meet and confer with the CFPB. The CFPB denied ACICS's motion for reconsideration of that denial on October 27, 2015, and on October 29, 2015, filed the petition for enforcement that is the subject of this appeal. *See* 12 U.S.C. § 5562(e).

The Bureau argued in its petition that it had "reason to believe" that ACICS, in its capacity as an accreditor, possessed "information relevant to the Bureau's investigation" into "whether any entity or other person has engaged or is engaging in unlawful acts and practices in connection with accrediting for-profit colleges, in violation of the [Consumer Financial Protection Act], or any other Federal consumer financial law." ACICS opposed the petition on a number of grounds, including that the Bureau's investigation into the accreditation of for-profit colleges was outside the scope of its authority.

The district court denied the petition. *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 183 F. Supp. 3d 79, 80 (D.D.C. 2016). The court framed the issue before it as a single question: "Did the CFPB have the statutory authority to issue the CID in question?" *Id.* at 82. "Unfortunately for the CFPB," the court held, "the answer is no." *Id.* After reviewing the CFPB's statutory authority, *see id.* at 82–83, the court noted that the laws enforced by the CFPB do not "address, regulate, or even tangentially implicate the accrediting process of for-profit colleges," *id.* at 83. The court concluded that, "at first blush, the CID's statement of purpose appears to concern a subject matter that is *not* within the statutory jurisdiction of

the CFPB." *Id.* Based on the Notification of Purpose and the requests, the court further determined that the CFPB's investigation "clearly . . . targets the accreditation process generally," which "the CFPB was never empowered to do." *Id.* at 83–84. Because the CFPB "plow[ed] head long into fields not clearly ceded to [it] by Congress," the court denied the petition. *Id.* at 84. The CFPB appealed.

We have jurisdiction pursuant to 28 U.S.C. § 1291. *See FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992); *FTC v. Texaco, Inc.*, 555 F.2d 862, 873 n.21 (D.C. Cir. 1977) (en banc).

## II.

Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act") in the wake of the financial crisis of 2008 and 2009. *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 51 (D.C. Cir. 2015) (citing Pub. L. No. 111-203, 124 Stat. 1376 (2010)). Title X of the Dodd-Frank Act—the Consumer Financial Protection Act ("CFPA")—established the Consumer Financial Protection Bureau to "regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws," 12 U.S.C. § 5491(a), and "to implement and . . . enforce Federal consumer financial law," *id.* § 5511(a); *see also id.* §§ 5492(a), 5511(b)–(c). The "Federal consumer financial law" that the CFPB enforces includes the CFPA and eighteen pre-existing consumer protection statutes. *Id.* § 5481(12), (14); *Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 686–87 (D.C. Cir. 2015). Relevant to our analysis, the CFPA prohibits "unfair, deceptive, or abusive act[s] or practice[s] under Federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service." 12 U.S.C.

§ 5531(a); *see also id.* § 5536(a)(1)(B). "Consumer financial product[s] or service[s]" include consumer loans and debt collection activities. *See id.* § 5481(5), (15).

The CFPA vests the Bureau with broad "rulemaking, supervisory, investigatory, adjudicatory, and enforcement authority . . . ." *Morgan Drexen*, 785 F.3d at 687 (citing 12 U.S.C. §§ 5512(b), 5514–5516, 5562–5564). One of the CFPB's "primary functions" is to "supervis[e] covered persons for compliance with Federal consumer financial law, and tak[e] appropriate enforcement action to address violations of Federal consumer financial law[.]" 12 U.S.C. § 5511(c)(4). Pursuant to its investigative authority, the Bureau may issue CIDs requiring the production of documents and oral testimony from "any person" that it believes may be in possession of "any documentary material or tangible things, or may have any information, relevant to a violation" of the laws that the Bureau enforces. *Id.* § 5562(c)(1); *see also* 12 C.F.R. § 1080.6. CIDs allow the Bureau to investigate and collect information "before the institution of any proceedings." 12 U.S.C. § 5562(c)(1). Each CID must "state the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation." *Id.* § 5562(c)(2); *see also* 12 C.F.R. § 1080.5. Because "CIDs are not self-enforcing," *John Doe Co. v. CFPB*, 849 F.3d 1129, 1131 (D.C. Cir. 2017), the CFPB must file a petition in federal court to enforce a CID if a recipient refuses to comply, 12 U.S.C. § 5562(e)(1).

## III.

A district court's decision on a petition to enforce an administrative subpoena is reviewed for abuse of discretion, but the legal standard applied by the district court is reviewed *de novo*. *See FTC v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 148 (D.C. Cir. 2015); *see also McLane Co. v. EEOC*,

No. 15-1248, ___ S. Ct. ___, 2017 WL 1199454, at *6, *7 n.3 (U.S. Apr. 3, 2017).

As noted, the Bureau may issue CIDs to obtain information relevant to potential violations of the laws it enforces before initiating any proceedings. 12 U.S.C. § 5562(c); 12 C.F.R. § 1080.6. We have treated CIDs as a form of administrative subpoena. *See FTC v. Ken Roberts Co.*, 276 F.3d 583, 584–87 (D.C. Cir. 2001); *Invention Submission*, 965 F.2d at 1087; *see also United States v. Markwood*, 48 F.3d 969, 975–76 (6th Cir. 1995). "Administrative agencies wield broad power to gather information through the issuance of subpoenas." *Resolution Trust Corp. v. Thornton*, 41 F.3d 1539, 1544 (D.C. Cir. 1994). Pursuant to their "power of inquisition," agencies may use subpoenas to "investigate merely on suspicion that the law is being violated, or even just because [they] want[] assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950); *see also Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 216 (1946); *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1023–24 (D.C. Cir. 1978); *Texaco*, 555 F.2d at 875.

Courts play a limited role in subpoena enforcement proceedings. *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 253 (D.C. Cir. 2005); *Texaco*, 555 F.2d at 871–72. In determining whether to enforce a CID, courts consider only whether "[(1)] the inquiry is within the authority of the agency, [(2)] the demand is not too indefinite and [(3)] the information sought is reasonably relevant." *Ken Roberts*, 276 F.3d at 586 (quoting *Morton Salt*, 338 U.S. at 652); *see also United States v. Powell*, 379 U.S. 48, 57–58 (1964); *Arthur Young*, 584 F.2d at 1023–24. Courts must also ensure that subpoenas are not "unduly burdensome or unreasonably broad." *Texaco*, 555 F.2d at 881–82; *see also Arthur Young*, 584 F.2d at 1031–33. Courts generally defer to an agency's interpretation of the

scope of its own investigation. *See FTC v. Church & Dwight Co.*, 665 F.3d 1312, 1315–16 (D.C. Cir. 2011); *Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997). Thus, "when the information sought falls within the purview of the regulatory agency's authority," judicial review of an administrative subpoena typically results in enforcement. *FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380, 385–86 (D.C. Cir. 1981) (citations omitted).

But there are real limits on any agency's subpoena power. *Ken Roberts*, 276 F.3d at 586; *Arthur Young*, 584 F.2d at 1023–24. As an initial matter, the deference courts afford agencies does not "eviscerate the independent role which the federal courts play in subpoena enforcement proceedings." *Machinists Non-Partisan Political League*, 655 F.2d at 386; *see also ASAT*, 411 F.3d at 254. The statutory power to enforce CIDs in the district courts, *see* 12 U.S.C. § 5562(e), entrusts courts with the authority and duty not to rubber-stamp the Bureau's CIDs, but to adjudge their legitimacy, *see FTC v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966, 973–74 (D.C. Cir. 1980). As we have stated, "federal courts stand guard . . . against abuses of the[] subpoena-enforcement processes . . . ." *Arthur Young*, 584 F.2d at 1024 & n.39. A court's role in enforcement proceedings, while limited, "is neither minor nor ministerial." *Ken Roberts*, 276 F.3d at 587. Otherwise put, "while the court's role . . . is narrow . . . within its confines it is potent[.]" *Arthur Young*, 584 F.2d at 1024 n.39.

Agencies are also not afforded "unfettered authority to cast about for potential wrongdoing . . . ." *In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412, 1418 (D.C. Cir. 1994). Accordingly, courts will not enforce a CID when the investigation's subject matter is outside the agency's jurisdiction. *See Morton Salt*, 338 U.S. at 652; *Ken Roberts*,

276 F.3d at 586–87; *Machinists Non-Partisan Political League*, 655 F.2d at 386. Nor will they enforce a demand "where there is 'too much indefiniteness or breadth' in the items requested." *Machinists Non-Partisan Political League*, 655 F.2d at 385 (quoting *Okla. Press*, 327 U.S. at 208–09). In extraordinary circumstances, a court also may inquire into allegations that an agency is using an administrative subpoena for an improper purpose. *See Powell*, 379 U.S. at 58; *Resolution Trust Corp. v. Frates*, 61 F.3d 962, 965 (D.C. Cir. 1995).

**IV.**

The district court's memorandum opinion supporting its denial of the CFPB's petition for enforcement discusses broadly the authority of the Bureau to conduct the investigation in which the CID was issued. The court addressed ACICS's argument that "the CFPB is attempting to conduct an investigation outside its statutory authority . . . ." 183 F. Supp. 3d at 82. Ultimately, the court concluded that "the CFPB lacks authority to investigate the process for accrediting for-profit schools . . . ." *Id.* at 84. Before us, the parties largely argue the case in equally broad terms. However, as the district court rightly observed, the issue before that court, and now this one, is a single question: "Did the CFPB have the statutory authority to issue the CID in question?" *Id.* at 82. Because we can easily answer the issue on a narrower basis, and because the invalidity of the CID makes it unnecessary to reach the broad determination of the Bureau's authority to investigate the area of accreditation at all, we will not reach the broad question answered by the district court. Rather, we will confine our analysis to the invalidity of this particular CID.

An administrative agency's authority to issue subpoenas "is created solely by statute." *Peters v. United States*, 853 F.2d

692, 696 (9th Cir. 1988). Thus, before analyzing whether the Bureau's investigation is "sanctioned" by the CFPA, *Resolution Trust Corp. v. Walde*, 18 F.3d 943, 947 (D.C. Cir. 1994), we will determine whether the Bureau complied with the CFPA's statutory requirements in the issuance of this CID, *Markwood*, 48 F.3d at 976–77, 980; *see also Powell*, 379 U.S. at 57–58. Although the CFPB may define the boundary of its investigation "quite generally," *Invention Submission*, 965 F.2d at 1090, it must comply with the terms of 12 U.S.C. § 5562(c)(2) before we can fully consider the *Morton Salt* factors.

The CFPA mandates that "[e]ach [CID] shall state the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation." 12 U.S.C. § 5562(c)(2); *see also* 12 C.F.R. § 1080.5. Section 5562(c)(2) ensures that the recipient of a CID is provided with fair notice as to the nature of the Bureau's investigation. Because the validity of a CID is measured by the purposes stated in the notification of purpose, *see Church & Dwight*, 665 F.3d at 1315, the adequacy of the notification of purpose is an important statutory requirement.

In this case, the CID's Notification of Purpose states:

> The purpose of this investigation is to determine whether any entity or person has engaged or is engaging in unlawful acts and practices in connection with accrediting for-profit colleges, in violations of sections 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536, or any other Federal consumer financial protection law. The purpose of this investigation is also to determine

> whether Bureau action to obtain legal or equitable relief would be in the public interest.

In this proceeding, other than noting that an agency may define the scope of its investigation in general terms, the Bureau wholly fails to address the perfunctory nature of its Notification of Purpose. As noted, the Bureau's ability to define the boundary of its investigation does not absolve it from complying with the CFPA. We conclude that, as written, the Notification of Purpose fails to state adequately the unlawful conduct under investigation or the applicable law.

To begin with, the CID describes "the nature of the conduct constituting the alleged violation which is under investigation," 12 U.S.C. § 5562(c)(2), as simply "unlawful acts and practices in connection with accrediting for-profit colleges." Granted, a notification of purpose may use broad terms to articulate an investigation's purpose, *see Texaco*, 555 F.2d at 874 n.26, 877, but § 5562(c)(2) mandates that the Bureau provide the recipient of the CID with sufficient notice as to the nature of the conduct and the alleged violation under investigation. Unlike the cases relied on by the Bureau, *see, e.g.*, *Church & Dwight*, 665 F.3d at 1314; *Invention Submission*, 965 F.2d at 1087–88, the CID in this case does not inform ACICS of the investigation's purpose. The Notification of Purpose defines the relevant conduct as "unlawful acts and practices in connection with accrediting for-profit colleges." It never explains what the broad and non-specific term "unlawful acts and practices" means in this investigation. Tellingly, in attempting to explain the scope of its investigation, the Bureau merely repeats the broad language used in the Notification of Purpose. As we observed above, our review of the validity of a CID is governed by the *Morton Salt* analysis. While that review is narrow, it is not without content. As we noted in a subpoena enforcement proceeding involving a different federal

agency, "broad language used to describe th[e] purpose makes it impossible to apply the other prongs of the *Morton Salt* test." *Sealed Case*, 42 F.3d at 1418; *cf. FTC v. Carter*, 636 F.2d 781, 788 (D.C. Cir. 1980) ("The Commission . . . allowed our examination of the relevance of their subpoena requests[] by identifying the specific conduct under investigation . . . ."). We cannot determine, for example, whether the information sought in the CID is reasonably relevant to the CFPB's investigation without knowing what "unlawful acts and practices" are under investigation. That is to say, where, as in this case, the Notification of Purpose gives no description whatsoever of the conduct the CFPB is interested in investigating, we need not and probably cannot accurately determine whether the inquiry is within the authority of the agency and whether the information sought is reasonably relevant. In short, we reach the same conclusion as the district court—albeit on narrower grounds—that is, the CID does not comply with the requirements of the statute.

The CFPB's recognition that it lacks statutory authority over the accreditation process of for-profit colleges further illustrates the CID's inadequacy. The CFPB's ability to define the scope of its investigation broadly "does not afford it unfettered authority to cast about for potential wrongdoing . . . ." *Sealed Case*, 42 F.3d at 1418; *see also Church & Dwight*, 665 F.3d at 1316. The Bureau argues that it has an interest in the "possible connection" and "intersection" between the lending practices of ACICS-accredited institutions and the accreditation process. Even if the CFPB is correct, that interest does not appear on the face of the Notification of Purpose. While the Bureau may be correct in noting that it need not speculate as to "the precise character of [the] possible violations" its investigation might uncover, *see Texaco*, 555 F.2d at 877, it is required by statute to adequately inform ACICS of the link between the relevant conduct and the alleged

violation. As the district court correctly noted, the Notification of Purpose "says nothing" about this potential link.[1] *See* 183 F. Supp. 3d at 83.

The CID's description of "the provision of law applicable to such violation," 12 U.S.C. § 5562(c)(2), is similarly inadequate. The Notification of Purpose identifies 12 U.S.C. §§ 5531 and 5536, as well as "any other Federal consumer financial protection law," as the applicable laws. Sections 5531 and 5536 set forth the CFPA's general prohibition of unfair, deceptive, or abusive acts and practices in connection with transactions involving consumer financial products and services. *See id.* §§ 5531(a), 5536(a)(1)(B). These provisions "stand[] broadly alone" in the Bureau's Notification of Purpose, especially considering the Bureau's failure to adequately state "the specific conduct under investigation," and thus tell ACICS nothing about the statutory basis for the Bureau's investigation. *See Carter*, 636 F.2d at 788. The CFPA provides detailed definitions of "Federal consumer financial law," 12 U.S.C. § 5481(12), (14), and "[c]onsumer financial product or service," *id.* § 5481(5), (15), yet the CID contains no mention of these definitions or how they relate to its investigation. The inclusion of the uninformative catch-all phrase "any other Federal consumer financial protection law" does nothing to cure the CID's defects. Congress limited the Bureau's CID authority with § 5562(c)(2)'s notice requirements, and framing the applicable law in such a broad manner does not satisfy Congress's clear directive. Indeed, were we to hold that the unspecific language of this CID is sufficient to comply with the statute, we would effectively write out of the statute all of the notice requirements that Congress put in.

---

[1] We express no opinion as to whether a revised CID that complies with § 5562(c)(2) should be enforced. *Cf. United States v. Aero Mayflower Transit Co.*, 831 F.2d 1142, 1146 n.6 (D.C. Cir. 1987).

### CONCLUSION

For the reasons stated, we conclude that the CID failed to advise ACICS of "the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation." 12 U.S.C. § 5562(c)(2). Accordingly, we affirm the district court's denial of the Bureau's petition to enforce the CID.

*So ordered.*