**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1516
_____

CONSUMER FINANCIAL PROTECTION BUREAU

v.

HEARTLAND CAMPUS SOLUTIONS, ECSI,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-17-cv-1502)
District Judge: Hon. Cathy Bissoon
_____

Argued July 10, 2018
_____

Before: SHWARTZ, NYGAARD, and RENDELL, Circuit Judges.

(Filed: August 13, 2018)

Allyson B. Baker, Esq. [ARGUED]
Eric Z. Cass, Esq.
Alexandra Megaris, Esq.
Sameer P. Sheikh, Esq.
Rachel P. Willer, Esq.
Venable
600 Massachusetts Avenue, N.W.
Washington, D.C. 20001

    *Counsel for Appellant*

Kelly M. Folks, Esq.
Kevin E. Friedl, Esq. [ARGUED]

Thomas McCray-Worrall, Esq.
Alusheyi J. Wheeler, Esq.
Consumer Financial Protection Bureau
1700 G Street, N.W.
Washington, D.C. 20552

     *Counsel for Appellee*

_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

The Consumer Financial Protection Bureau ("CFPB") issued a civil investigative demand ("CID") to Heartland Campus Solutions, ECSI ("ECSI"), a student loan servicer, seeking information concerning ECSI's "servicing of student loans, including processing payments, charging fees, transferring loans, maintaining accounts, and credit reporting[.]" J.A. 41. ECSI objected to the CID for, among other reasons, failing to comply with the statute authorizing the CFPB to enforce CIDs, 12 U.S.C. § 5562(c). The CFPB filed a petition to enforce the CID, which the District Court granted. Because the CID complies with § 5562(c)(2), we will affirm.

I

Congress established the CFPB to "regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws," 12 U.S.C. § 5491(a), which include eighteen statutes set forth in 12 U.S.C. § 5481(12) as well as 12 U.S.C. § 5531, which allows the CFPB to prohibit unfair, deceptive, or

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

abusive acts or practices. One of the CFPB's "primary functions" is to "tak[e] appropriate enforcement action to address violations of Federal consumer financial law[.]" Id. § 5511(c)(4).

To enforce these consumer financial laws, Congress empowered the CFPB to issue CIDs requiring, among other things, the production of documents or testimony from "any person" whom the CFPB "has reason to believe" has information relevant to a violation of such laws. Id. § 5562(c)(1). Each CID must "state the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation." Id. § 5562(c)(2). This is known as the "Notification of Purpose." 12 C.F.R. § 1080.5. The recipient of a CID may engage in a meet-and-confer with a CFPB investigator to "resolve all issues regarding compliance with" the CID. 12 C.F.R. § 1080.6(c). If the recipient refuses to comply with the CID, the CFPB may file a petition in federal court to enforce it. 12 U.S.C. § 5562(e)(1).

On May 18, 2017, the CFPB issued a CID to ECSI, seeking documents and written responses to interrogatories. ECSI and the CFPB engaged in a meet-and-confer, during which ECSI objected to the Notification of Purpose contained in the CID. The CFPB withdrew its May 18 CID and, on June 9, 2017, issued a new CID to ECSI. The Notification of Purpose in the June 9 CID provided:

> The purpose of this investigation is to determine whether student-loan servicers or other persons, in connection with servicing of student loans, including processing payments, charging fees, transferring loans, maintaining accounts, and credit reporting, have engaged in unfair, deceptive, or abusive acts or practices in violation of §§ 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536; or have engaged in conduct that violates the Fair Credit Reporting Act, 15

3

U.S.C. §§ 1681 et seq., and its implementing Regulation V, 12 C.F.R. Part 1022. The purpose of this investigation is also to determine whether Bureau action to obtain legal or equitable relief would be in the public interest.

J.A. 41. ECSI objected to the Notification of Purpose during a second meet-and-confer, submitted a letter to the CFPB requesting modifications and clarifications of certain interrogatories and document requests, and received a response from the CFPB addressing some of its comments. ECSI nevertheless petitioned the CFPB to set aside or modify the CID. The CFPB denied the petition and, when ECSI ultimately refused to comply with the CID, it filed its own petition for enforcement in the United States District Court for the Western District of Pennsylvania. Consumer Financial Protection Bureau v. Heartland Campus Solutions, ESCI, No. 17-1502, 2018 WL 1089806, at * 1 (W.D. Pa. 2018) ("ESCI"). The Court held a Show Cause hearing, at which ECSI conceded that if the Notification of Purpose listed just one of the five activities specified, the CID would have satisfied § 5562(c)(2).

The District Court granted the petition and: (1) found that the CID satisfied § 5562(c)(2)'s statutory notice requirement because it specified the "nature of the conduct" under investigation by enumerating five specific activities and the applicable provisions of law, ESCI, 2018 WL 1089806, at *4; (2) rejected ECSI's argument that the CID's inclusion of all aspects of a student loan servicer's operations in its list of activities under investigation rendered it insufficient because there is "no authority . . . holding that the CFPB is barred from investigating the totality of a company's business operations," id.; (3) determined that the CID at issue here materially differed from the CID held unenforceable in Consumer Financial Protection Bureau v. Accrediting Council for

4

Independent Colleges & Schools, 854 F.3d 683 (D.C. Cir. 2017) ("ACICS"), id.; and (4) held that the CID satisfied all the requirements for enforceability of an administrative subpoena under University of Medicine & Dentistry of New Jersey v. Corrigan, 347 F.3d 57 (3d Cir. 2003) (applying factors for enforcement of an administrative subpoena set forth in United States v. Morton Salt Co., 338 U.S. 632 (1950)). Id. at *4-5.

ECSI appeals.

## II[1]

An administrative agency "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." United States v. Powell, 379 U.S. 48, 57 (1964). Ordinarily, "judicial proceedings are appropriate only after the investigation has led to enforcement, because [j]udicial supervision of agency decisions to investigate might hopelessly entangle the courts in areas that would prove to be unmanageable and would certainly throw great amounts of sand into the gears of the administrative process." Corrigan, 347 F.3d at 64 (alteration in original, citations and internal quotation marks omitted). As a result, "judicial review of administrative subpoenas is 'strictly limited.'" Id. (quoting FTC v. Texaco, Inc., 555 F.2d 862, 871-72

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 12 U.S.C. § 5562(h)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291 and 12 U.S.C. § 5562(h)(2).

We review a district court's order enforcing administrative subpoenas for abuse of discretion. FDIC v. Wentz, 55 F.3d 905, 908 (3d Cir. 1995). Abuse of discretion occurs when "the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." NLRB v. Frazier, 966 F.2d 812, 815 (3d Cir. 1992). We review a district court's interpretation of federal statutes de novo. Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 570 (3d Cir. 2002).

5

(D.C. Cir. 1977) (en banc)).  Under this "strictly limited" review, a district court will

enforce a CFPB CID if it, first, complies with the terms of § 5562(c)(2), and, second,

satisfies the standard set forth in Morton Salt Co.  See ACICS, 854 F.3d at 690.  The CID

here satisfies both requirements.

A

Section 5562(c)(2) sets forth two criteria for CIDs that seek to "ensure[] that the

recipient of a CID is provided with fair notice as to the nature of the Bureau's

investigation."  ACICS, 854 F.3d at 690.  Specifically, the plain language of § 5562(c)(2)

requires each CID to identify (1) the nature of the conduct constituting the alleged

violation and (2) the provision of law applicable to such violation.[2]  The CID in this case

satisfies both requirements.  First, the CID here clearly identifies the conduct at issue as

"processing payments, charging fees, transferring loans, maintaining accounts, and credit

reporting[.]"  J.A. 41.  Second, the CID identifies the provisions of law applicable to the

conduct being investigated, namely "§§ 1031 and 1036 of the Consumer Financial

Protection Act of 2010, 12 U.S.C. §§ 5531, 5536; . . . [and] the Fair Credit Reporting Act,

15 U.S.C. §§ 1681 et seq., and its implementing Regulation V, 12 C.F.R. Part 1022."  Id.

Together, they reflect that the CID seeks information about unfair, deceptive, abusive and

acts prohibited by specific statutes in connection with processing payments, charging

fees, transferring loans, maintaining accounts, and credit reporting in connection with

_____

[2] Because § 5562(c)(2)'s plain language sets forth the required contents of the
notice, it is unnecessary to consider the legislative history ESCI cites regarding the
importance of notice in administrative agency investigations.

student loans.  Given that "the precise character of possible violations [of a statute] cannot be known" during the investigative phase, Texaco, Inc., 555 F.2d at 877, the CFPB is not required to be any more specific.[3]  Indeed, "the CFPB may define the boundary of its investigation 'quite generally[.]'"  ACICS, 854 F.3d at 690 (quoting FTC v. Invention Submission Corp., 965 F.2d 1086, 1090 (D.C. Cir. 1992)).

ECSI contends that the CFPB has drawn the boundaries of its investigation too broadly because the identified conduct includes "all component functions of any student loan servicing business . . . [,] [leaving ECSI with] no notice of what conduct is being investigated."  Appellant's Br. 16.  This contention rests on the flawed assumption that the CFPB could not investigate all of ECSI's conduct.  Nothing prohibits the CFPB from investigating the totality of ECSI's business activities, and courts have previously enforced administrative subpoenas regarding conduct that is coextensive with the recipient's business activity.  See, e.g., Invention Submission Corp., 965 F.2d at 1087-90

_____

[3] In essence, the dissent would require the agency to explain how a practice violates a particular law.  This is not what Congress required.  Congress required an agency to identify only the type of conduct that may violate the law and the law being violated.  Congress' minimal requirements make sense.  First, they ensure that the conduct and laws at issue are within the CFPB's jurisdiction.  Second, they recognize that CIDs issued at the beginning of an investigation may be served when little is known about the specific ways the conduct may be deceptive.  As stated above, a CID may be issued where the investigation is in its infancy, and it may be difficult to provide the detail the dissent seems to require.  Third, CIDs can be served on both the target of the CFPB's inquiry and nonparties who may have relevant information.  The dissent's requirement would result in disclosing to nonparties the specific type of deceptive conduct under investigation and perhaps result in disclosure of information that may inadvertently harm the target.  Thus, Congress' minimal requirements provide fair notice to the recipient of the CID concerning the purpose for which it is being issued and allows the Government to maintain confidentiality concerning the scope of its investigation.

7

(D.C. Cir. 1992) (enforcing administrative subpoena issued to a company that "is in the business of promoting other people's inventions" as part of an investigation into "false or misleading representations made in connection with the advertising, offering for sale and sale of its services relating to the promotion of inventions or ideas"); Interstate Commerce Comm'n v. Gould, 629 F.2d 847, 848-49, 853, 857 (3d Cir. 1980) (enforcing an Interstate Commerce Commission "inspection request" to inspect the "transportation-related" business records of a "sole proprietorship engaged in the business of brokering transportation services").

Moreover, ECSI concedes that if the CID had listed just one of the activities set forth in the CID, it would have been a permissible demand because it would have notified ECSI of the specific activity under investigation. Listing several activities does not make the CID borderless. Rather, it simply specifies in one demand various activities in which ECSI engages and which are under investigation.

ECSI's contention that the Notification of Purpose here is materially indistinguishable from the Notification of Purpose found to be inadequate in ACICS fails. The Notification of Purpose at issue in ACICS stated:

> The purpose of this investigation is to determine whether any entity or person has engaged or is engaging in unlawful acts and practices in connection with accrediting for-profit colleges, in violations of sections 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536, or any other Federal consumer financial protection law. The purpose of this investigation is also to determine whether Bureau action to obtain legal or equitable relief would be in the public interest.

454 F.3d at 690. The CID in ACICS failed to "explain[] what the broad non-specific term 'unlawful acts and practices' mean[t] in this investigation." Id. The Notification of

8

Purpose here identifies the actors, i.e., "student loan servicers," and the types of activities, i.e., "processing payments, charging fees, transferring loans, maintaining accounts, and credit reporting," under investigation. J.A. 41. Thus, it has the specificity the CID in ACICS lacked.

ECSI also relies on the ACICS court's conclusion that the Notification of Purpose inadequately described the relevant laws, 12 U.S.C. §§ 5531 and 5536, which prohibit an individual from "committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law . . . ." 12 U.S.C. § 5531. The ACICS court found the references to §§ 5531 and 5536 in the ACICS CID insufficient in light of FTC v. Carter, 636 F.2d 781, 788 (D.C. Cir. 1980), where the court held that a reference to a provision of law prohibiting unfair and deceptive practices "standing broadly alone would not serve [the] very specific notice of purpose," "especially considering" the CFPB's failure to identify the specific conduct under investigation. ACICS, 854 F.3d at 691. This is not relevant here. The ECSI CID includes references to specific provisions of law other than the bar on unfair and deceptive practices, and the CFPB has identified the conduct under investigation and specific statutes that may be violated. Moreover, whereas the CID in ACICS included "the uninformative catch-all phrase 'any other Federal consumer financial protection law,'" 854 F.3d at 691-92, the ECSI CID does not.

Finally, despsite ECSI's assertions, ACICS does not impose any additional requirements beyond those set forth in § 5562(c)(2). ECSI argues that the CFPB "must do more than simply state the conduct and list provisions of law; the [CFPB]'s obligation is to inform a CID recipient 'of the link between the relevant conduct and the alleged

9

violation.'" Reply Br. 6 (quoting ACICS, 854 F.3d at 691). The ACICS court did not create such a third requirement. Rather, its discussion of a "link" arose because the CFPB had acknowledged in ACICS that it lacked statutory authority over the CID recipient's business activities. More specifically, in ACICS, the CFPB was investigating the accreditation process of for-profit colleges, and was examining whether for-profit colleges engaged in "deceptive practices in connection with their student-lending activities." 854 F.3d at 686. ACICS is not a for-profit college, nor is it an entity under the CFPB's enforcement authority. Because the basis for the CFPB's "interest" in ACICS's records was nowhere on the face of the CID and the CID itself did not even disclose the types of conduct alleged to violate the statutes, the ACICS court concluded that the CFPB failed to provide "the link between the relevant conduct and the alleged violation." Id. Thus, the ACICS court did not impose a third requirement regarding link," but rather its discussion of a link was merely an explanation for why the CID there failed to provide notice of its purpose, as § 5562(c)(2) requires. Id.

For these reasons, the Notification of Purpose in the CID served upon ECSI complies with § 5562(c)(2).[4]

---

[4] Whether other cases have approved CIDs with greater specificity is of no consequence. Nothing compels the CFPB to issue an equally specific CID to ECSI. The CFPB is only required to issue a CID that complies with § 5562(c)(2) and the Morton Salt factors.

10

B

The CID also meets all of the requirements our Court and the Supreme Court have imposed for enforcing an agency investigative demand. See Morton Salt Co., 338 U.S. at 642-43; Corrigan, 347 F.3d at 64.

First, the Notification of Purpose identifies a legitimate purpose—to investigate whether student loan servicers violated 12 U.S.C. §§ 5531 and 5536 or the Fair Credit Reporting Act and its implementing regulations, law the CFPB is statutorily empowered to enforce. See 12 U.S.C. § 5481(12); 12 U.S.C. § 5531(a). Second, the requests are relevant. Texaco, Inc., 555 F.2d at 874 ("[T]he relevance of the agency's subpoena requests may be measured only against the general purposes of its investigation."). Because the conduct under investigation covers the entirety of its student loan servicing business operations, the requests, which all relate to ESCI's student loan servicing, are relevant to the CFPB's investigatory purpose. Third, the CFPB asserts, and ESCI does not dispute, that the information sought is not already in its possession. Fourth, the agency has followed the administrative steps required, specifically compliance with § 5562(c)(2). Fifth, ESCI's claim that the CID is unreasonably broad and burdensome because it amounts to a "fishing expedition" without a "sufficient investigatory purpose," Appellant's Br. 32, fails because, as we have explained, the CFPB has a valid investigatory purpose and the information sought pertains to activities under investigation. Thus, the District Court did not err in its application of the Morton Salt factors and granting the petition.

11

## III

For the foregoing reasons, we will affirm the District Court's order granting the CFPB's petition to enforce the CID.

*Consumer Financial Protection Bureau v. Heartland Camput Solutons, ECSI*

*No. 18-1516*

---

**RENDELL**, *Circuit Judge*, dissenting

The CFPA prohibits "unfair, deceptive, or abusive act[s] or practice[s] . . . in connection with any transaction with a consumer." 12 U.S.C. § 5531(a). If the Bureau undertakes an investigation into a suspected violation of the law, it issues a civil investigative demand ("CID"). The CID must include a notification of purpose, that is, it must "state the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation." *Id.* § 5562(c)(2). One would logically assume that the notification would point to the purported deceptive or abusive act or practice—even in general terms.

The notice here does no such thing. Indeed, it parrots all of the activities in which the target engages and cites to the relevant provisions of law. Curiously, many courts have approved similarly uninformative notices.[1] In effect, these

---

[1] *See, e.g.*, *CFPB v. Seila Law, LLC*, No. 8:17-cv-01081, 2017 WL 6536586, at *3–4 (C.D. Cal. Aug. 25, 2017), *stayed pending appeal*, No. 17-56324 (9th Cir. Sept. 13, 2017) (upholding a CID identifying the relevant conduct as "advertising, marketing, or sale of debt relief services or products, including but not limited to debt negotiation, debt elimination, debt settlement, and credit counseling" and

1

courts, and the majority today, bless CIDs that in essence say "the purpose of this investigation is to determine whether anyone who works for you, in connection with doing anything related to your business, has engaged in unfair or deceptive acts or practices or violated any provision of the FCRA." Surely this cannot be the law.

But one court has pointed out the absurdity of giving a notification that notifies of no purpose whatsoever. Judge Sentelle, writing for the Court of Appeals for the District of Columbia, notes that: "Because the validity of a CID is measured by the purposes stated in the notification of purpose, the adequacy of the notification of purpose is an important statutory requirement." *CFPB v. Accrediting Council for Indep. Colls. & Schs. (ACICS)*, 854 F.3d 683, 690 (D.C. Cir. 2017) (citation omitted). In that case, as here, the CID set forth a broad purpose with no purportedly violative

---

applicable law as "Sections 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 USC §§ 5531, 5536; 12 U.S.C. § 5481 et seq., the Telemarketing Sales Rule, 16 C.F.R. § 310.1 et seq., or any other Federal consumer financial law"); *CFPB v. Source for Public Data, LP*, No. 3:17-mc-16, 2017 WL 2443135, at *4, 12 (N.D. Tex. June 6, 2017), *stayed pending appeal*, No. 17-10732 (5th Cir. July 12, 2017) (upholding a CID identifying the conduct under investigation and applicable law as "engaging in unlawful acts and practices in connection with the provision or use of public records information in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., Regulation V, 12 C.F.R. Part 1022, or any other federal consumer financial law").

conduct outlined.[2] The CID language there stated in part: "The purpose of this investigation is to determine whether

[2] The majority attempts to distinguish *ACICS* on the grounds that the CID referred to business activities which the Bureau lacked authority to investigate. But the Court there did not rest its analysis on this question, instead stating that: "Because we can easily answer the issue on a narrower basis, and because the invalidity of the CID makes it unnecessary to reach the broad determination of the Bureau's authority to investigate the area of accreditation at all, we will . . . . confine our analysis to the invalidity of this particular CID." *Id.* at 689–90. Nor can its discussion of a link between the relevant conduct and the alleged violation be so easily set aside. The "link" is not a "third requirement," Majority Op. Typescript at 10, it is the essential notice of what violative conduct is being investigated. When, as here, a CID lists conduct that is otherwise lawful, there must be some stated nexus between that conduct and the provision of law whose violation the Bureau seeks to investigate.

Nor does the CID's citation to the Fair Credit Reporting Act cure the infirmity, for the FCRA is itself an expansive law governing all activities relating to the reporting of consumers' credit information. *See* 15 U.S.C. § 1681. If the CID were to refer to, say § 623 of the FCRA, which requires a person furnishing information to a consumer reporting agency to "promptly notify" the agency that the person has furnished information that is incomplete or inaccurate, 15 U.S.C. § 1681s-2, then the nature of the conduct constituting the alleged violation would be clear to the subject of investigation. Not so here. Stating *another* broad provision of law that the Bureau has the authority to enforce does not clarify the nexus between that law and the

3

any entity or person has engaged or is engaging in unlawful acts and practices in connection with accrediting for-profit colleges, in violation of sections 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536, or any other Federal consumer financial protection law." *Id.* at 686. The Court correctly noted that the CID "never explains what the broad and non-specific term 'unlawful acts and practices' means in this investigation," *id.* at 690, and opines that the CID did not comply with the statute because the Bureau "is required by statute to adequately inform ACICS of the link between the relevant conduct and the alleged violation," *id.* at 691. Similarly, here, the CID provides no link between the benign conduct it identifies and the broad provisions of law it cites. A notice like this one cannot stand.

The majority posits that "[n]othing prohibits the CFPB from investigating the totality of ECSI's business activities." Majority Op. Typescript at 7. This assertion may be correct, as far as it goes, but it is not probative of the issue of fair notice. Moreover, it signals the potential for an overbroad exercise of agency powers. The CFPA "does not afford" the Bureau "unfettered authority to cast about for potential wrongdoing." *In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412, 1418 (D.C. Cir. 1994). And, in *Morton Salt*, the Supreme Court emphasized that "[o]f course[,] a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

stated, otherwise lawful conduct. If anything, it broadens the CID's scope.

4

Whether the Bureau investigates a business operation in whole or in part, it must "provide sufficient notice." Crucially, the notice provision is the only substantive limitation on the CFPB's authority to issue CIDs. The notice here is not only not fair notice, it illustrates the potential for abuse of the agency's power. I would require the CID to refer to the purported "unfair, deceptive, or abusive act or practice." Therefore, I respectfully dissent.